UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MAZEN MOHAMMAD SHWEIKA,

                    Plaintiff,

                                              Case No. 09-11781-BC
v.                                            Honorable Thomas L. Ludington

DEPARTMENT OF HOMELAND
SECURITY and DISTRICT DIRECTOR
OF THE UNITED STATES CITIZENSHIP
AND IMMIGRATION SERVICE,

                    Defendants.
_____/

**OPINION AND ORDER DISMISSING COMPLAINT
FOR LACK OF SUBJECT MATTER JURISDICTION**

This long-running immigration case began eight years ago, when Plaintiff Mazen
Shweika filed an application for naturalization as a United States citizen. Three years passed.
Defendant U.S. Citizenship and Immigration Services ("Agency"), the agency within Defendant
Department of Homeland Security tasked with overseeing immigration, did not decide the
application. So Plaintiff filed a mandamus action in this Court. In 2008, the Court remanded the
case to the Agency for a decision. The Agency held a hearing on Plaintiff's application,
concluded that he was not of "good moral character," and denied his application. Plaintiff
requested that the Agency hold a "review hearing" pursuant to 8 U.S.C. § 1447(a). Ten months
passed. Again, the Agency did not act on Plaintiff's request. Plaintiff, all the while, remained a
lawful, fully employed resident of the United States.

In 2009, Plaintiff brought a second suit in this Court, seeking a writ of mandamus
ordering the Agency to hold the review hearing or, alternatively, de novo review of his
application pursuant to 8 U.S.C. § 1421(c). Before the Court addressed Plaintiff's suit, the

Agency scheduled the review hearing.  Plaintiff appeared.  When the immigration officer began

to ask questions on topics not raised at the first hearing, however, Plaintiff refused to answer and

terminated the hearing on the advice of his (former) counsel.  In March 2010, the Agency again

denied Plaintiff's application.  Plaintiff then moved for de novo review.

A bench trial was held over three days in 2011.  For the reasons explained on the record,

the Court found that Plaintiff demonstrated his "good moral character" by clear and convincing

evidence.  The Court reserved judgment, however, on a single legal issue, which the Court

concluded merited supplemental briefing.  Noting its continuing duty to ensure that it has

jurisdiction and noting that Plaintiff terminated the Agency's review hearing, the Court ordered

the parties to brief:

> Whether, pursuant to 8 U.S.C. § 1421(c) and all applicable statutes and
> regulations, the Court lacks jurisdiction to grant Plaintiff's application for
> naturalization because Plaintiff terminated the Defendant's interview regarding
> the denial of Plaintiff's naturalization application before the immigration officer
> had completed his examination of Plaintiff.

ECF No. 48.  The parties submitted supplemental briefs on the issue.  ECF Nos. 49–52.  It is thus

ripe for resolution.

As a preliminary matter, it should be noted, Plaintiff appears to be the first applicant for

citizenship to have terminated a review hearing and then sought review in federal district court.

Thus, the narrow question presented — what legal consequence, if any, flows from Plaintiff's

terminating the review hearing — appears to be an issue of first impression.  The applicable

statutes and regulations, however, establish that Plaintiff did not exhaust his administrative

remedies.  Consequently, this Court lacks the authority to rule on the merits of his application.

Only "after a hearing before an immigration officer," 8 U.S.C. § 1421(c) provides, may

an applicant seek judicial review.  As discussed below, the implication of this provision is that

the applicant must complete the hearing.  Similarly, the applicable regulations provide that an applicant "will be considered as failing to prosecute such application if he or she . . . fails to provide . . . testimony deemed by USCIS to be necessary to establish his or her eligibility for naturalization."  8 C.F.R. § 335.7.  The implication is, again, that the applicant is required to complete the hearing.  And the case law establishes that the Court does not have jurisdiction to review the application until the applicant exhausts his administrative remedies.  *E.g.*, *Escaler v. U.S. Citizenship & Immigration Servs.*, 582 F.3d 288, 292 (2d Cir. 2009).  Because Plaintiff did not do so, the complaint will be dismissed for lack of jurisdiction.

## I

Plaintiff was born in Jordan in 1962.  Trained abroad as doctor, after moving to this country he became a certified nurse anesthesiologist.  Since 1998, he has been a lawful permanent resident.  In 2004, he filed an application for naturalization with the Agency.  About three years passed.  The Agency did not complete its review of the application.

On February 27, 2007, Plaintiff filed suit in this Court.  Seeking a writ of mandamus, Plaintiff requested an order directing the Agency to complete its review.  The Agency answered, attributing the delay in processing Plaintiff's application to the FBI, which had not completed the required background check.

In February 2008, the Court remanded the case to the Agency and ordered it to reach a determination on Plaintiff's application on or before May 30, 2008.  *Shweika v. Cannon*, No. 07-10870-BC (E.D. Mich. Feb. 29, 2008) (unpublished).  The Agency did, denying Plaintiff's application on May 29, 2008.  According to the Agency, it did so because of Plaintiff's inability to provide a certified disposition of an arrest that occurred in Virginia some years earlier.

Plaintiff filed a notice of administrative appeal (a "form N-336") in June 2008 requesting a "review hearing" pursuant to § 1447(a). He explained that he submitted a photocopy of the arrest record, but could not provide a certified copy because he was acquitted of the charges and the records relating to the case were expunged. About ten months passed. Again, the Agency did not complete its review of the application.

In May 2009, Plaintiff again filed suit in this Court. Plaintiff asked the Court to compel the Agency to decide the pending petition for naturalization or, alternatively, to grant Plaintiff a de novo hearing in this Court. Compl. 5, ECF No. 1. He also explained that he was "willing to stipulate denial by [the Agency]" so that the Court may conduct the de novo hearing. *Id*.

In January 2010, the Agency moved to dismiss or remand. ECF No. 13. Asserting that mandamus relief was not warranted, the Agency further argued that the Court lacks subject matter jurisdiction because Plaintiff has not exhausted his administrative remedies.

On February 9, 2011, the Court granted the Agency's motion in part and denied it in part. *Shweika v. Dep't Homeland Security*, No. 09-11781, 2010 WL 457457 (E.D. Mich. Feb. 9, 2010) (slip op.). Observing that a hearing on Plaintiff's petition was scheduled to take place two days later, on February 11, 2010, the Court explained:

> [M]andamus relief is unnecessary. It is understandable that Plaintiff is anxious for the hearing to take place-more than five years have passed since his application for naturalization was submitted. Additionally, more than eighteen months have passed since Plaintiff requested the § 1447(a) hearing by submitting a form N-336. According to USCIS regulations, the hearing should have taken place within 180 days of the request. The USCIS has, admittedly, not complied with that deadline. However, it is not clear that the 180-day deadline is a firm, nondiscretionary mandate, rather than an intra-agency goal. The Mandamus Act is only available to enforce mandatory duties. . . . At some point, unreasonable delay may warrant mandamus relief, but that point has not been reached here.
>
> Nevertheless, given the substantial delays that have occurred in this case and the approaching administrative hearing, it is not necessary to dismiss Plaintiff's

-4-

> complaint entirely.   Following next week's hearing, Plaintiff's naturalization
> application will be ready for review by this Court.

2010 WL 457457, at *2.  Or so the Court anticipated.

On February 11, 2010, Plaintiff appeared for the review hearing.  An immigration officer, Officer Ian Modelski, conducted the hearing.  After questions about a number of topics, the conversation eventually turned to allegations made by Plaintiff's former wife, Angeline Jacobsen.  Officer Modelski asked a number of questions about the couple's relationship, living arrangements, finances, and the like.  He then asked:  "she also said that when you — when you'd get upset that you would throw things, break things, is that something you did?"  Agency Review Hr'g Tr. 37–38, Feb. 11, 2010, *attached as* Defs.' Tr. Ex. N ("Hr'g Tr.").  Plaintiff's counsel interjected that he needed to speak to his client privately, informing the Officer Modelski "[we are] most likely gonna stop the interview."  Hr'g Tr. 38.  Going back on the record a short time later, Plaintiff's counsel explained:

Counsel:   Officer Modelski I believe the interview is going way beyond the interview required for citizenship . . . .  Ah, at this point unless you wanna interview on the naturalization petition, ah, we respectfully will ask you to stop the interview.

Officer:   Well, I see a connection . . . .  [I]t appears that he misrepresented the fact that he had been arrested, ah, that this then precluded a full examination of, of potential issues that would have been examined in some fashion or other that is legitimate.  This relates to good moral character.

Counsel:   No, we, we came here in good faith, because right now there's an order of the United States District Court for no discovery by either side, which means you can't even interview him unless we voluntarily want to interview. . . .

Officer, ah, Modelski [you] did indicate to me earlier, right in the beginning, that you did receive a copy of that order from the court, so you are very well aware that discovery is — in this case, is extremely limited.   And I believe you're interviewing him way beyond a

naturalization application.   What somebody said, what's the credibility?   You have not given us an affidavit or any under oath statement from this person who is his ex-wife, and now suddenly he has to answer every question . . . .

I think it's, it's just not applicable.  It's not relevant. . . .

Officer:   [W]hether it, whether it'll turn out to be a positive or negative factor I don't know yet at this point. . . .

Counsel:   O — obviously, I mean, if you have the pre-assumption to deny this then obviously —

Officer:   [inaudible]

Counsel:   — it's gonna go to a court, court —

Officer:   — [I] don't have a preexisting —

Counsel:   — and then court, you can — you know, in the court —

Officer:   If I had a pre-assumption I would say this is what she said and this is what I believe and —

Counsel:   This gentleman is a doctor.  He has a medical degree from Russia.  He just didn't do the certification here and now he works as a, as a, physician assistant or research assistant anesthesiologist.  He is in a responsible position in this country for some 18 years and here he has to answer these questions to get his citizenship, which has been pending for six years, 2004 he filed.  And court is very annoyed that the government is not able to complete his adjudication in six years.

Officer:   Well, that's why the government is asking these questions, to try to complete —

Counsel:   All right.   Ah, again, once again, respectfully, ah, we'll stop the interview unless you wanna ask any question out of the N400 application or N336, which is the only subject we are here for. . . .

Officer:   Anything that happened during the statutory period relates to the N400. Anything that happened after the filing of the N400 is also relevant. . . .

*Both speaking at once*

Counsel:   — from what date, today going back five years?

Officer:   — no, the statutory period began five years before he filed the application.  That's what he wanted the hearing about —

Counsel:   No, I believe that the statutory period —

*Both speaking at once*

Officer:   — saying that he [inaudible] did have good moral character —

Counsel:   — I believe the statutory period, period has to be counted from today.  When the government has delayed this application for six years it's almost — you waive that right to go back five years beyond the application of, of filing.  But again, there's no point us arguing, you know?  You — government's got their attorneys, they can argue their points, they got very high quality attorneys, U.S. attorneys, ah, working on this case. . . .  But I — we almost believe that this court — this case will go to court.  There's no way that — and in fact, our pleadings when we filed a complaint we said we concede the fact that you're going to deny it.  And I — you know, we're even willing to concede, because we know you're gonna deny it . . . .

This gentleman's a working person, medical field, serving people, doing on patient what he needs to do every day, working with doctors in the hospital.  And for [you] to say that he's not a reformed person after 12 years, he's not this, I mean, we can come up with many reasons.  If it goes to court, it goes to court.  That's what we are here for.  But we are, again, respectfully, if you wanna interview on N400, N336 to the extent, that's reasonable and relevant.  We'll go forward with it.  Otherwise we'll just have to stop and go, ah — let it go to court.

Hr'g Tr. 38–43.  After the officer attempted to inquire further about Plaintiff's former spouse, Plaintiff's counsel terminated the interview.

On March 25, 2010, the Agency denied Plaintiff's appeal of his naturalization application.  The decision explained:

Your refusal to answer the reviewing officer's questions left additional areas of your conduct and your character unexplored.  Additionally, "immigration officials may draw a negative inference from a naturalization applicant's silence."  You have therefore failed to establish that you satisfy all of the requirements for

-7-

naturalization, particularly regarding the need to demonstrate good moral character and lawful admission as a permanent resident.

Title 8 Code of Federal Regulations, Section 335.7 provides guidance in this situation:

> An applicant for naturalization who has appeared for the examination on his or her application as provided in 8 CFR 335.2 shall be considered as failing to prosecute such application if he or she, without good cause being shown, either failed to excuse an absence from a subsequently required appearance, or fails to provide within a reasonable period of time such documents, information, or testimony deemed by the Service to be necessary to establish his or her eligibility for naturalization. The Service shall deliver notice of all such requests for appearance or supporting evidence, in writing, to the applicant either in person or to the applicant's last known address. In the event that the applicant fails to respond within 30 days of the date of notification, the Service will adjudicate the application on the merits pursuant to Section 336.1 of this chapter.

Whenever any person makes an application for naturalization, the burden of proof shall be upon such person to establish satisfaction of all the requirements to be naturalized as a citizen of the United States as quoted above in section 316.2 of Title 8 of the Code of Federal Regulations. Your unwillingness to submit required documentary and oral testimony is deemed to be a failure to prosecute this application. The incomplete record fails to establish your fulfillment of the requirements for naturalization, including those of good moral character, as specified in section 316(a)(3); the five years of lawful residence as specified in section 316(a)(1) and 318; and the continuous physical presence as specified in section 316(a)(2) of the Immigration and Nationality Act. You have not met your burden of proof. The denial of your Form N-400 is hereby affirmed.

This decision is made without any prejudice to your right to seek review in accordance with section 310 of the Immigration and Nationality Act [8 U.S.C. § 1421].

Defs.' Resp. Mot. for Evidentiary Hr'g Ex. 1, at 6–7, ECF No. 20-2 (internal citation omitted).

Quoting section 310 of the Immigration and Nationality Act in a footnote, the decision noted:

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5. Such

review shall be de novo, and the court shall make its own findings of fact and
conclusions of law and shall, at the request of the petitioner, conduct a hearing de
novo on the application.

*Id*. at 7 n.1 (quoting 8 U.S.C. 1421(c)).

In March 2010, Plaintiff moved in this Court for a de novo review of the Agency's
decision. ECF No. 18. The Agency responded that discovery was necessary first because the
Agency has "attempted to collect evidence on issues relating to Plaintiff's good moral character
through the administrative process; however, Plaintiff has not provided evidence in response to
[the Agency's] requests, and he refused to answer questions at his appeal hearing on these issues
and prematurely terminated the hearing." Defs.' Resp. 10. The Agency also asserted that "there
is good authority that applicants who fail to comply with requests for information and documents
in their naturalization proceedings have not adequately exhausted their administrative remedies,
and therefore, have not satisfied the prerequisites for establishing subject matter jurisdiction
under 8 U.S.C. § 1421(c)." *Id*. at 10 n.3 (citing *Johnson v. Bergland*, 614 F.2d 415, 417–18 (5th
Cir. 1980); *Omari v. Gonzalez*, No. 3:05-cv-0397-P, 2005 WL 2036498, at *4 (N.D. Tex. Aug.
11, 2005)).

In April, the Court granted the motion for an evidentiary hearing. ECF No. 22. Before
the hearing began on June 21, 2011, however, the parties informed the court that a witness that
both parties intended to call, Ms. Jacobsen, was unavailable to testify. At the conclusion of the
proofs, Plaintiff moved for a continuance pending Ms. Jacobsen's availability. The motion was
granted.

The trial resumed on August 30, 2011. At the conclusion of the proofs, the Court found
that Plaintiff had met his burden of proof and demonstrated his "good moral character" by clear

and convincing evidence.  The Court reserved judgment, however, on a single legal issue, which

the Court concluded merited supplemental briefing:

> Whether, pursuant to 8 U.S.C. § 1421(c) and all applicable statutes and regulations, the Court lacks jurisdiction to grant Plaintiff's application for naturalization because Plaintiff terminated the Defendant's interview regarding the denial of Plaintiff's naturalization application before the immigration officer had completed his examination of Plaintiff.

Order Incorporating Findings of Fact and Law and Ordering Supp. Briefing, at 2, ECF No. 48.

The parties submitted briefs on the issue.  For the following reasons, the Court finds that it does

lack jurisdiction to grant Plaintiff's application for naturalization because Plaintiff terminated the

Agency's interview.

## II

The Immigration and Nationality Act of 1952, 8 U.S.C. §§ 1101–1537, represents "a

comprehensive and complete code covering all aspects of admission of aliens to this country."

*Toll v. Moreno*, 458 U.S. 1, 13 (1982) (quoting *Elkins v. Moreno*, 435 U.S. 647, 664 (1978)).

Until the enactment of the Immigration Act of 1990, authority over immigration issues was

"vested in different branches of government, with naturalization being the province of the courts

and removal the province of the executive."  *Perriello v. Napolitano*, 579 F.3d 135, 138 (2d Cir.

2009) (internal quotation marks omitted) (quoting *Ajlani v. Chertoff*, 545 F.3d 229, 235 (2d Cir.

2008)).

In 1990, Congress unified these powers in the executive, with § 401(a) of the Act

providing: "The sole authority to naturalize persons as citizens of the United States is conferred

upon the Attorney General."  Immigration Act of 1990 § 401(a) (codified at 8 U.S.C. § 1421(a)).

Congress thus "streamlined the naturalization process and provided for comprehensive review of

applications by immigration officers empowered to grant or deny naturalization." *Perriello*, 579

F.3d at 140 (citing 8 U.S.C. § 1446(d)).  In pertinent part, 8 U.S.C. § 1446 provides:

> Before a person may be naturalized, an employee of the Service, or of the United States designated by the Attorney General, shall conduct a personal investigation of the person applying for naturalization . . . .
>
> The Attorney General shall designate employees of the Service to conduct examinations upon applications for naturalization.  For such purposes any such employee so designated is authorized to take testimony concerning any matter touching or in any way affecting the admissibility of any applicant for naturalization . . . .
>
> The employee designated to conduct any such examination shall make a determination as to whether the application should be granted or denied, with reasons therefor.

§§ 1446(a), (b), (d).  Part 335 of Title 8 of the Code of Federal Regulations, "Examination on

Application for Naturalization," fills in the details of how the examination is conducted.  Section

335.2, for example, provides:

> Prior to the beginning of the examination, USCIS shall make known to the applicant the official capacity in which the officer is conducting the examination.  The applicant shall be questioned, under oath or affirmation, in a setting apart from the public.  The applicant and USCIS shall have the right to present such oral or documentary evidence and to conduct such cross-examination as may be required for a full and true disclosure of the facts.

8 C.F.R. § 335.2(c).  Section 335.7 cautions:

> An applicant for naturalization who has appeared for the examination on his or her application as provided in 8 CFR 335.2 will be considered as failing to prosecute such application if he or she, without good cause being shown, either failed to excuse an absence from a subsequently required appearance, or fails to provide within a reasonable period of time such documents, information, or testimony deemed by USCIS to be necessary to establish his or her eligibility for naturalization.

8 C.F.R. § 335.7.  Failure to prosecute results in the Agency denying an application.  *See, e.g.*,

*Keaik v. Devukaj*, 557 F. Supp. 2d 820, 823 (E.D. Mich. 2008) (noting that the Agency "denied

-11-

the petitioner's naturalization application for failure to prosecute").   Conversely, § 335.3 provides:

> USCIS shall grant the application if the applicant has complied with all requirements for naturalization under this chapter.  A decision to grant or deny the application shall be made at the time of the initial examination or within 120 days after the date of the initial examination.

8 C.F.R. § 335.3.

Although the Immigration Act of 1990 divests the federal courts of the primary authority over naturalization proceedings, it nevertheless "preserve[s] a role for federal courts in the naturalization process: 'after exhausting administrative remedies, an [applicant] may petition for de novo review in the district court.'"  *Perriello*, 579 F.3d at 140 n.5 (internal alteration omitted) (quoting *Etape v. Chertoff*, 497 F.3d 379, 386 (4th Cir. 2007)).

Specifically, the Act provides that an applicant may petition a district court for review at two points in the naturalization process.  The first occurs when an applicant has been examined and more than 120 days have elapsed without a decision on the application:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter.  Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C. § 1447(b).  If the Agency does make a determination within this period, however, the applicant must exhaust his administrative remedies before returning to court.

This exhaustion requirement is not expressly provided for in the statute; rather, it has been inferred from the review process established by the act.  *See, e.g.*, *Escaler v. U.S. Citizenship & Immigration Servs.*, 582 F.3d 288, 292 (2d Cir. 2009) ("Section 1421(c),

authorizing de novo judicial review of the denial of an application to be naturalized, requires the exhaustion of administrative remedies prior to seeking that relief.");  *see also Karam v. U.S. Citizenship & Immigration Servs.*, 373 F. App'x 956, 958 (11th Cir. 2010) (per curiam); *Idahosa v. Bureau of Immigration & Customs Enforcement*, 111 F. App'x 293, 294 (5th Cir. 2004) (per curiam); *see generally* Arnold Rochvarg, *Report to the Administrative Conference — Reforming the Administrative Naturalization Process: Reducing Delays While Increasing Fairness*, 9 Geo. Immigr. L.J. 397, 435 n.179 (1995) (noting that "an applicant has failed to exhaust administrative remedies in order to obtain judicial review unless the applicant has proceeded through the intra-agency appeal process").

First, §1447 provides: "If, after an examination under section 1446 of this title, an application for naturalization is denied, the applicant may request a hearing before an immigration officer."  8 U.S.C. § 1447(a).  Section 1421, in turn, provides:

> The sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General. . . .
> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides . . . .  Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. §§ 1421(a), (c).  Again, the Code of Federal Regulations elaborates, with § 336.2 providing in pertinent part:

> Upon receipt of a timely request for a hearing, USCIS will schedule a review hearing . . . .  He or she may receive new evidence or take such additional testimony as may be deemed relevant to the applicant's eligibility for naturalization or which the applicant seeks to provide.  Based upon the complexity of the issues to be reviewed or determined, and upon the necessity of conducting further examinations with respect to essential naturalization requirements, such as literacy or civics knowledge, the reviewing immigration officer may, in his or her discretion, conduct a full de novo hearing or may utilize

a less formal review procedure, as he or she deems reasonable and in the interest of justice.

8 C.F.R. § 336.2(b).  The regulations continue:

> A USCIS determination denying an application for naturalization under section 335(a) of the Act [8 U.S.C. § 1446] shall not be subject to judicial review until the applicant has exhausted those administrative remedies available to the applicant under section 336 of the Act [8 U.S.C. § 1447].  Every petition for judicial review shall state whether the validity of the final determination to deny an application for naturalization has been upheld in any prior administrative proceeding and, if so, the nature and date of such proceeding and the forum in which such proceeding took place.

8 C.F.R. § 336.9(d).

Thus, under the Act and its implementing regulations, the second point at which an applicant may petition a district court occurs only after the applicant has been examined by the Agency, has had the application denied, has again been examined by the Agency in a "review hearing," and has again had the application denied.

This exhaustion is required by the review process that the statute establishes.  It is not a common law creation based on prudential considerations.  *Cf. Perkovic v. I.N.S.*, 33 F.3d 615, 619 (6th Cir. 1994) ("In most contexts, exhaustion of administrative remedies is a prudential, court-created doctrine.").  Consequently, courts do not have the "discretion to employ a broad array of exceptions that allow a plaintiff to bring his case in district court despite his abandonment of the administrative review process." *Theodoropoulos v. I.N.S.*, 358 F.3d 162, 172–73 (2d Cir. 2004) (quoting *Beharry v. Ashcroft*, 329 F.3d 51, 58 (2d Cir. 2001)).  Rather, "When, as here, the exhaustion requirement is established by statute — in this case, the interaction of Section 1421(a), which vests the attorney general with sole authority in naturalization matters, with Section 1421(c) — the requirement is mandatory, and courts are not free to dispense with it." *Escaler*, 582 F.3d at 292 (internal alterations and quotation marks

omitted) (quoting *Bastek v. Fed Crop Ins. Co.*, 145 F.3d 90, 94 (2d Cir. 1998)); *see also Ponnapula v. Campbell*, No. 06-2350, 2007 WL 2688550, at *3 (W.D.Tenn. Sept. 11, 2007) (collecting cases); *cf. Coit Indep. Joint Venture v. Fed. Sav. & Loan Ins. Corp.*, 489 U.S. 561, 579-80 (1989) (noting that a statutory exhaustion requirement is jurisdictional).

In this case, Plaintiff did not complete the review hearing. Instead, on the advice of counsel, he terminated it. The Agency then denied Plaintiff's application. This much is undisputed. *Compare* Defs.' Resp. Br. 1, ECF No. 52 ("[Plaintiff] does not contest that he terminated his 1447(a) hearing."), *with* Pl.'s Supp. Br. 5, ECF No. 49 ("[I]t is clear from the record of proceedings that a decision denying Plaintiff's application for naturalization was issued after a hearing before a Service officer, regardless of whether he terminated the interview.").

As noted, whether an applicant's terminating a review hearing constitutes a failure to prosecute the application appears to be an issue of first impression. The text of the statute and its implementing regulations both establish that it is. Beginning with the text, § 1421(c) provides that only "after a hearing before an immigration officer" may an applicant seek judicial review. 8 U.S.C. § 1421(c). The reasonable implication of the phrase "after a hearing" is that the applicant is required to complete the hearing. A contrary interpretation — that an applicant may terminate the hearing prematurely without prejudicing his ability to appeal the decision to the court — would effectively negate the hearing requirement. If the applicant could terminate the hearing at any point once the questioning is underway (as the subsequent judicial review would literally be "after a hearing") he could do so before answering the first question. Obligating the applicant to proceed through a hearing, but permitting the applicant to terminate it at the outset, would thus render the hearing requirement meaningless.

This is not to suggest that there are no limits on the questions that the hearing officer may require the applicant answer. Rather, as discussed below, the implementing regulations provide that an applicant may decline to answer a question if he has "good cause" for doing so. 8 C.F.R. § 335.7. (Plaintiff had good cause, for example, for not producing the certified disposition of an arrest that occurred in Virginia as it had been destroyed. As detailed below, however, he did not have good cause for terminating the hearing.)

The regulations reinforce the conclusion that the applicant is required to complete the hearing. In pertinent part 8 C.F.R. § 335.7 provides that the applicant "will be considered as failing to prosecute such application if he or she, without good cause being shown, . . . fails to provide . . . such documents, information, or testimony deemed by USCIS to be necessary to establish his or her eligibility for naturalization." As not answering the Agency's questions ("fail[ing] to provide . . . testimony") constitutes "failing to prosecute" (absent "good cause"), the reasonable implication is, again, that the applicant is required to complete the hearing, or show good cause for not doing so.

Turning to the case law, the parties identify no case on all fours with the facts of this case, and an independent review reveals none. Plaintiff, it appears, is the first naturalization applicant to have walked out of the Agency hearing and into court.

Courts have, however, discussed the consequences of an applicant's declining to furnish information requested by the Agency. In *Omari v. Gonzales*, No. 3:05-CV-0397-P, 2005 WL 2036498 (N.D.Tex. Aug. 11, 2005), the plaintiff was examined, had his application denied, submitted a request for administrative review, and was again examined. *Id*. at 3. The court relates what happened next (and the consequences):

The officer than requested that additional information/documents be submitted within the next thirty days. . . . [I]t is undisputed that [the plaintiff] had notice that additional documents were requested and that he failed to comply with that request. Accordingly, the INS was justified in denying his application on procedural grounds without reaching the merits of his request for administrative review.

Because Plaintiff failed to comply with the request for information and documents, and his failure resulted in the denial of his application for want of prosecution, he has not adequately exhausted the administrative remedies available to him and has not satisfied the jurisdictional prerequisite of 8 U.S.C. § 1421(c). Where, as here, exhaustion of administrative remedies is required by statute, exhaustion is jurisdictional and must be enforced.

*Id.* at 3–4 (internal citations omitted). Although no more than persuasive authority, this reasoning is sound.

As another district court summed up more than fifty years ago, "Before granting naturalization, the United States is entitled to frank, honest and unequivocal information from the applicant for citizenship in answer to questions which may throw light upon his qualification or disqualification for that privilege." *United States v. Chandler*, 152 F. Supp. 169, 172–73 (D. Md. 1957). Fundamentally, the Act and regulations establish, obtaining the privilege of citizenship is conditioned on candor. Absent the required candor to the Agency, the applicant cannot come to the court for relief.

It must be acknowledged, however, that the analytical approach adopted in *Omari* has not been applied in every other opinion (or, indeed, by the Agency itself[1]). In *Keaik v. Devukaj*, 557 F. Supp. 2d 820 (E.D. Mich. 2008), for example, the Agency denied an application for naturalization because it "determined that the petitioner failed to meet the moral-character

---

[1] The Agency's decision denying Plaintiff's application, for example, explains that the application is being denied for failure to prosecute, providing: "Your unwillingness to submit required documentary and oral testimony is deemed to be a failure to prosecute this application." It goes on, however, to also state that the application is being denied because Plaintiff has not established his good moral character. It concludes: "This decision is made without any prejudice to your right to seek review in accordance with section 310 of the Immigration and Nationality Act [8 U.S.C. 1421]."

requirement, and that he failed to prosecute his claim by failing to furnish information that could

have shed more light on the petitioner's character." *Id*. at 827–28. Specifically, he "did not

provide certified copies of all police reports related to the [charge of driving while on a

suspended license]." *Id*. at 824. When the petitioner appealed to the district court, the Agency

moved to dismiss, arguing that the petitioner had not established his good moral character and,

alternatively, that "the failure of the petitioner to furnish proper documentation relating to the

traffic offenses within a reasonable period of time constitutes a failure to prosecute his

citizenship application." *Id*. at 822. Agreeing with the Agency, the court wrote:

> Although these offenses are insufficient to establish bad moral character by
> themselves, they certainly bolster the conclusion of poor moral character
> premised on the petitioner's lack of candor, which brings us to the second point.
> By failing to disclose his convictions, the petitioner gave false testimony to obtain
> an immigration benefit in violation of 8 U.S.C. § 1101(f)(6) and 8 C.F.R. §
> 316.10(b)(2)(vi). There has been no claim that the petitioner lacks an
> understanding of English (he satisfied the language requirement), so it is difficult
> to see how he could have so seriously misunderstood the simple question whether
> he had ever "been arrested, cited, or detained by any law enforcement officer for
> any reason." App. for Naturalization at 8. Since an applicant "shall be found to
> lack good moral character" if he gives false testimony to secure an immigration
> benefit, 8 C.F.R. § 316.10(b)(2)(vi), the petitioner's lack of candor alone justifies
> denial of his application and this petition.
>
> Finally, there is the issue on which the CIS placed the most weight: failure to
> prosecute. The regulations expressly state that failure to prosecute will be found
> where an applicant, without good cause being shown, "fails to provide within a
> reasonable period of time such documents, information, or testimony deemed by
> the Service to be necessary to establish his or her eligibility for naturalization." 8
> C.F.R. § 335.7. Following the initial interview, the CIS formally requested a
> series of documents to assess the petitioner's legal history. The petitioner
> complied only in part, producing some (but not all) of the documents concerning
> his convictions for driving with a suspended license and none of the documents
> relating to his other citations. This is all the more significant given that the
> petitioner did not furnish documentation showing completion of probation. After
> all, an application for naturalization "will not be approved until after the
> probation, parole, or suspended sentence has been completed." 8 C.F.R. §
> 316.10(c)(1).

> On balance, it is clear that the CIS properly denied the petitioner's application, and after *de novo* review the Court is constrained to agree with that result. . . .
>
> The Court finds upon a *de novo* review of the record that the petitioner has not established by a preponderance of the evidence that he is "a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." 8 U.S.C. § 1427(a).

*Id.* at 829 (internal alteration omitted). Thus, the court reached the application's merits, finding the applicant's imperfect compliance with the request for documents relevant to this task. The blending of the good moral character and administrative exhaustion requirements is problematic. Clouding the distinction between the jurisdictional question and the substantive question may, for example, lead an incautious reader to conclude that the court took up the merits before establishing jurisdiction. Thus, although *Omari* is somewhat mechanical, it is the more prudent approach to the two distinct inquiries.

Here, as in *Omari*, Plaintiff did not comply with the Agency's request for information. Refusing to testify further, he terminated the interview. This resulted in the denial of his application for want of prosecution. Consequently, as in *Omari*, "he has not adequately exhausted the administrative remedies available to him and has not satisfied the jurisdictional prerequisite of 8 U.S.C. § 1421(c)." 2005 WL 2036498, at *4.

Plaintiff's arguments to the contrary are unpersuasive. (When subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction. *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990)).

First, Plaintiff asserts, "Defendant misses the point in confusing 'termination of the interview' with 'failure to exhaust administrative remedies.' " Pl.'s Resp. Br. 3, ECF No. 51. Plaintiff explains further:

> The fact that his attorney terminated the review hearing after the reviewing officer passed on the opportunity to consider the alleged legal errors raised in Mr. Shweika's petition for review, does not change the fact that he exhausted his administrative remedies, it just gives rise to an issue of whether he had shown good cause for doing so, in which case the finding of the reviewing officer, that he failed to prosecute his application, would be moot.

Pl.'s Supp. Br. 12. Because he had good cause to terminate the interview, Plaintiff argues, he did in fact exhaust the available administrative remedies.

Plaintiff's premise is unsubstantiated — he does not demonstrate good cause for terminating the interview. Explaining why he did so, Plaintiff writes:

> It is understandable that he was suspicious and fearful of the process and when the reviewing officer went far beyond the issue raised in his N336 petition (attempting to correct a simple Agency error) and was right to question the motives and intentions of the reviewing officer, whom [sic] he did not believe was acting in good faith. He has shown "good cause" for terminating the hearing.

Pl.'s Resp. Br. 13. He explains further:

> [T]he Service officer was not attempting to engage in a meaningful review of the errors alleged by the Plaintiff but rather was continuing the Agency's pattern and practice of affirmative misconduct, to harass Mr. Shweika and cause further delay, thus creating an atmosphere of hostility and suspicion and that [sic] Mr. Shweika's petition was not to be given fair and meaningful review.
>
> While the regulations give the reviewing officer very broad powers of review, extending to de novo review, the purpose of these broad powers are to ensure continuing eligibility for naturalization, especially in a case such as this where six years have passed from the time of the original interview and over a year and a half has passed since issuance of the decision following the initial interview. There was nothing in the file at the time of either the 2007 decision or the February 2010 review hearing that was not in the file at the time [of] the original interview and of which the original interviewing officer was unaware . . . .
>
> The reviewing officer, evidently trying to find something else upon which he could legitimately base a decision to deny Plaintiff's application, . . . began questioning him, during his review hearing, about his relationship with his former wife at which time his attorney objected because the officer had taken the interview well beyond the scope of the errors alleged by the applicant in his N-336.

> The fact that his attorney terminated the review hearing after the reviewing officer passed on the opportunity to consider the alleged legal errors raised in Mr. Shweika's petition for review, does not change the fact that he exhausted his administrative remedies, it just gives rise to an issue of whether he had shown good cause for doing so, in which case the finding of the reviewing officer, that he failed to prosecute his application, would be moot.

Pl.'s Supp. Br. 11–12.

Substantively, Plaintiff thus asserts that he had "good cause" for terminating a review hearing because the Agency went beyond the scope of the errors Plaintiff alleged in his petition for a review hearing. Essentially, he is asserting that the applicant, not the Agency, decides which issues will be addressed in the hearing. Such an assertion is contrary to the text of the act, its implementing regulations, and applicable precedent.

Section 1447 provides that at the review hearing the Agency may raise "any matter touching or in any way affecting the applicant's right to admission to citizenship." 8 U.S.C. § 1447(c). The regulations provide:

> The reviewing officer will have the authority and discretion to review the application for naturalization, to examine the applicant, and either to affirm the findings and determination of the original examining officer or to re-determine the original decision in whole or in part. . . . He or she may receive new evidence or take such additional testimony as may be deemed relevant to the applicant's eligibility for naturalization or which the applicant seeks to provide.

8 C.F.R. § 336.2(b). Likewise, the Supreme Court has established: "The Government is entitled to know of any facts that may bear on an applicant's statutory eligibility for citizenship, so that it may pursue leads and make further investigation if doubts are raised." *Berenyi v. Dist. Dir., I.N.S.*, 385 U.S. 630, 638 (1967), *quoted in* Defs.' Supp. Br. 9, ECF No. 50.

Plaintiff's assertion that he had "good cause" to terminate the hearing when the reviewing officer asked questions "beyond the scope of the errors alleged by [Plaintiff] in his N-336," Pl.'s Supp. Br. 12, is unpersuasive. He has not demonstrated good cause for terminating the hearing.

As an aside, it should be noted, Plaintiff may have been genuinely "suspicious and fearful of the process" and the "motives and intentions of the reviewing officer." Pl.'s Resp. Br. 13. Plaintiff's frustration with the protracted process is understandable. And he undoubtedly was frustrated with questions regarding allegations made by his former wife, Ms. Jacobsen (allegations that this Court later determined to be largely unsubstantiated). But exasperation is not exhaustion. Although unquestionably exasperating, to exhaust his administrative remedies Plaintiff was required to either "provide within a reasonable period of time such documents, information, or testimony deemed by USCIS to be necessary to establish his or her eligibility for naturalization" or to demonstrate "good cause" for not doing so. 8 C.F.R. § 335.7. Plaintiff did not do this. Rather, he terminated the hearing and refused to provide further testimony because "the officer had taken the interview well beyond the scope of the errors alleged by [Plaintiff]." Pl.'s Supp. Br. 12. Accordingly, he has not established the jurisdictional requirement of administrative exhaustion. His complaint must be dismissed.

Arguing in the alternative, Plaintiff also asserts that he exhausted his administrative remedies because the Agency could draw a negative inference from Plaintiff's silence. In support, Plaintiff cites *United v. Posada Carriles*, 541 F.3d 344 (5th Cir. 2008). Plaintiff's reliance is misplaced. That case began when Louis Posada Carriles, "a well known anti-Castro Cuban exile who has been associated with several major events in modern Latin American history," surreptitiously entered the country in 2005. *Id*. at 347. A former CIA operative and lieutenant in the U.S. Army, Posada had been involved in both the Bay of Pigs invasion and the Iran-Contra affair. He had spent time in a Venezuelan prison for bombing a Cuban aircraft (killing seventy-three people). And he had spent time in a Panamanian prison for attempting to assassinate Fidel Castro. He sought asylum in the United States and was taken into custody by

immigration officials.  Later, he initiated naturalization proceedings.  At the hearing, held in 2006, the government cautioned Posada that "he could exercise his right against self-incrimination if he thought that an answer would incriminate him, lying could subject him to criminal penalties, and any statement he gave could be used in any legal or administrative proceeding."  *Id*. at 356.  The hearing lasted two days.  "Posada answered many of the questions but at times invoked the Fifth Amendment and refused to answer."  *Id*. at 350.  The following year, "a federal grand jury returned a seven-count indictment charging Posada with making false statements in connection with efforts to obtain naturalization."  *Id*.  Posada moved to suppress the statements made at the hearing, asserting "that though it was clear (according to him) that he did not qualify for naturalization due to his prior foreign convictions . . . the government conducted the interview anyway, not to gather information regarding his eligibility for naturalization, but to obtain allegedly false statements to indict a 79 year old man who could no longer be indefinitely detained in immigration custody."  *Id*. at 351 (internal alterations and quotation marks omitted).  The district court agreed, suppressed the statements, and dismissed the indictment, writing that "it found the government's tactics 'grossly shocking and so outrageous as to violate the universal sense of justice.'"  *Id*. at 353.  The Fifth Circuit reversed, explaining:

> [T]he general rule that failing to warn that an investigation may result in criminal charges, absent affirmative misrepresentation, is not usually sufficient to constitute government deception.  Here, however, the government need not seek refuge in this rule because it did warn Posada (in the presence of Posada's lawyer) at the beginning of the interview that, among other things, he could exercise his right against self-incrimination if he thought that an answer would incriminate him, lying could subject him to criminal penalties, and any statement he gave could be used in any legal or administrative proceeding. . . .
>
> The district court additionally determined that the warnings "had little significance" as a result of the government's threats "that exercise of Fifth

Amendment rights might result in termination of the naturalization interview." This reasoning is incorrect, however, because immigration officials may draw a negative inference from a naturalization applicant's silence. . . .  The government did not act improperly in informing Posada, in accordance with this law, that his silence could be considered in adjudicating his application.  Further, the fact that Posada nonetheless invoked the Fifth Amendment several times during the interview tends to undercut any argument that, for whatever reason, he felt unable to do so.

*Id.* at 356, 357 n.3 (internal citations omitted) (citing *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1043–44 (1984); *United States v. Alderete-Deras*, 743 F.2d 645, 647 (9th Cir. 1984)).

Thus, Plaintiff is correct that the Agency may draw an adverse inference from silence. And Plaintiff is correct that his terminating the review hearing meant that the Agency's questions went unanswered, as they would have had Plaintiff invoked his right to silence.  He is not correct, however, that this superficial similarity means that Plaintiff exhausted his administrative remedies.

Invoking the constitutional right to not answer a specific question because of the risk of self-incrimination is not the same as walking out of a hearing.  *See generally Hoffman v. United States*, 341 U.S. 479, 487(1951) (discussing requirements for invoking the Fifth Amendment privilege).  To elaborate, an adverse inference may, perhaps, be reasonably drawn when the response to a specific question is invocation of the right to silence.  *See generally  Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (noting "the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them").  No such reasonable inference is possible, however, when the applicant terminates the hearing before the interviewer asks the questions.

Indeed, taken to its logical conclusion, Plaintiff's argument suggests that the applicant may simply ignore the review hearing altogether.  That is, if the applicant's terminating the

review hearing exhausts the administrative remedies, since the Agency may draw an adverse inference on any unasked questions, simply not appearing for the hearing should as well.[2] The government may draw its adverse inferences and deny the petition, and the petitioner will be able to seek de novo review in the district court. Such a conclusion, however, is irreconcilable with the text of the act, its implementing regulations, and the case law discussed above. In sum, exercising the constitutional right against self-incrimination is not the same as terminating a hearing. Plaintiff's reliance on *Posada Carriles* is misplaced.

Finally, Plaintiff argues that exhaustion is not required "given the unique history and circumstances of his case." Pl.'s Supp. Br. 6. He explains:

> The Court conducted an extensive hearing on his application and found him to be both credible and eligible for naturalization, finding that he proved himself to be a person of good moral character. The Court's only concern is that it did not want to set a precedent for the U.S. District Court to be used to allow applicants who are unhappy with the way the interview is proceeding to circumvent the administrative appellate procedure. Given the unique history of this case, the Court's expansion of the record did not have the effect of undermining the policies of the exhaustion doctrine.

Pl.'s Supp. Br. 13–14.

Plaintiff is correct that it is not obvious that the Immigration Act's de novo standard of review advances the traditional purposes of exhaustion, "protecting administrative agency authority and promoting judicial efficiency." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992). As noted, however, "When, as here, the exhaustion requirement is established by statute — in this case, the interaction of Section 1421(a), which vests the attorney general with sole authority in naturalization matters, with Section 1421(c) — the requirement is mandatory, and courts are

---

[2] As an aside, it should be noted that this is not a case in which the government terminated the hearing because of the applicant's invocation of the right to silence. In such a case, the applicant may well exhaust his administrative remedies because it would be the government, not the applicant, that refused to proceed with the administrative review hearing.

not free to dispense with it."  *Escaler*, 582 F.3d at 292 (internal alterations and quotation marks omitted) (quoting *Bastek*, 145 F.3d at 94); *cf. McCarthy*, 503 U.S. at 144 ("Where Congress specifically mandates, exhaustion is required.").  Consequently, the Court is not free to disregard the statutory requirements created by Congress.

### III

Accordingly, it is **ORDERED** that Plaintiff's complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**.


Dated: March 27, 2012

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 27, 2012.

s/Tracy A. Jacobs
TRACY A. JACOBS

---