UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MAZEN SHWEIKA,

                Plaintiff,                            Case No. 09-cv-11781

v.                                                  Honorable Thomas L. Ludington

DEPARTMENT OF HOMELAND SECURITY and
UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICE,

                Defendants.

_____/

**OPINION AND ORDER VACATING AGENCY DECISION AND DIRECTING
SUPPLEMENTAL BRIEFING**

      This immigration case began eleven years ago, when Plaintiff Mazen Shweika filed an application for naturalization as a United States citizen. Three years went by and Defendant United States Citizenship and Immigration Service ("Service"), the agency within Defendant Department of Homeland Security tasked with overseeing immigration, did not decide the application. So Plaintiff filed a mandamus action in this Court. In 2008, the Court remanded the case to the Service for a decision. The Service held a hearing on Plaintiff's application, concluded that he was not of "good moral character," and denied his application. Plaintiff requested that the Service hold a "review hearing" pursuant to 8 U.S.C. § 1447(a). Ten more months passed. Again, the Service did not act on Plaintiff's request. Plaintiff, all the while, remained a lawful, fully employed resident of the United States.

      In 2009, Plaintiff filed a second suit in this Court, seeking a writ of mandamus ordering the Service to hold the review hearing or, alternatively, de novo review of his application

pursuant to 8 U.S.C. § 1421(c). Before the Court addressed Plaintiff's suit, the Service scheduled the review hearing.

Plaintiff appeared. When the immigration officer began to ask questions on topics not raised at the first hearing, however, Plaintiff refused to answer and terminated the hearing on the advice of his (former) counsel. In March 2010, the Service again denied Plaintiff's application. Plaintiff then moved for de novo review.

A bench trial was held over three days in 2011. For the reasons explained on the record, the Court found that Plaintiff demonstrated his "good moral character" by clear and convincing evidence. The Court reserved judgment, however, on a single legal issue, which the Court concluded merited supplemental briefing. Noting its continuing duty to ensure that it has jurisdiction and noting that Plaintiff terminated the Service's review hearing, the Court ordered the parties to brief:

> Whether, pursuant to 8 U.S.C. § 1421(c) and all applicable statutes and regulations, the Court lacks jurisdiction to grant Plaintiff's application for naturalization because Plaintiff terminated the Defendant's interview regarding the denial of Plaintiff's naturalization application before the immigration officer had completed his examination of Plaintiff.

February 15, 2012 Order, ECF No. 48. The parties submitted supplemental briefs on the issue. *See* Supp. Briefs, ECF Nos. 49–52.

On March 27, 2012, the Court issued an Opinion on the issue of subject matter jurisdiction. Because Shweika did not complete his 8 U.S.C. § 1447 review hearing, the Court concluded that it did not have jurisdiction over his appeal. Shweika's case was dismissed with prejudice.

Shweika appealed. The Sixth Circuit held that 8 U.S.C. § 1421(c) does not impose a jurisdictional limitation and vacated this Court's opinion. *Shweika v. Dep't of Homeland Sec.*, 723 F.3d 710, 711 (6th Cir. 2013). The statutory limitation, the Sixth Circuit concluded, is

- 2 -

merely prudential, of the administrative-exhaustion variety. *Id*. The Sixth Circuit remanded Shweika's case for proceedings consistent with its opinion.

## I.

Plaintiff was born in Jordan in 1962. Having trained abroad as doctor, he moved to this country and became a certified nurse anesthesiologist. Since 1998, Shweika has been a lawful permanent resident. In 2004, he filed an application for naturalization with the Service. About three years passed without the Service completing its review of the application.

## A.

On February 27, 2007, Plaintiff filed suit in this Court. He requested a writ of mandamus directing the Service to complete its review. The Service attributed the delay in processing Plaintiff's application to the FBI, which had not completed the required background check.

In February 2008, the Court remanded the case to the Service and ordered it to reach a determination on Plaintiff's application on or before May 30, 2008. *Shweika v. Cannon*, Case No. 07-10870 (E.D. Mich. Feb. 29, 2008) (unpublished). The Service did, denying Plaintiff's application on May 29, 2008. According to the Service, it did so because of Plaintiff's inability to provide a certified disposition of an arrest that occurred in Virginia some years earlier.

Plaintiff filed a notice of administrative appeal (a "form N-336") in June 2008 requesting a "review hearing" pursuant to § 1447(a). He explained that he submitted a photocopy of the arrest record, but could not provide a certified copy because he was acquitted of the charges and the records relating to the case were expunged. Ten more months passed and the Service did not complete its review of the application.

**B.**

In May 2009, Plaintiff again filed suit in this Court. He asked the Court to compel the Service to decide the pending petition for naturalization or, alternatively, to grant Plaintiff a de novo hearing in this Court. *See* Pl.'s Compl. 5, ECF No. 1. Shweika was "willing to stipulate denial by [the Service]" so that the Court could conduct a de novo hearing. *Id.*

In January 2010, the Service moved to dismiss or remand. *See* Defs.' Mot. to Dismiss or Remand, ECF No. 13. The Agency argued that that mandamus relief was not warranted and, in any event, the Court lacked subject matter jurisdiction because Plaintiff has not exhausted his administrative remedies.

On February 9, 2011, the Court granted the Service's motion in part and denied it in part. *Shweika v. Dep't Homeland Security*, No. 09-11781, 2010 WL 457457 (E.D. Mich. Feb. 9, 2010). Observing that a hearing on Plaintiff's petition was scheduled to take place two days later, on February 11, 2010, the Court explained:

> [M]andamus relief is unnecessary. It is understandable that Plaintiff is anxious for the hearing to take place—more than five years have passed since his application for naturalization was submitted. Additionally, more than eighteen months have passed since Plaintiff requested the § 1447(a) hearing by submitting a form N-336. According to USCIS regulations, the hearing should have taken place within 180 days of the request. The USCIS has, admittedly, not complied with that deadline. However, it is not clear that the 180-day deadline is a firm, nondiscretionary mandate, rather than an intra-agency goal. The Mandamus Act is only available to enforce mandatory duties. . . . At some point, unreasonable delay may warrant mandamus relief, but that point has not been reached here.
>
> Nevertheless, given the substantial delays that have occurred in this case and the approaching administrative hearing, it is not necessary to dismiss Plaintiff's complaint entirely. Following next week's hearing, Plaintiff's naturalization application will be ready for review by this Court.

2010 WL 457457, at *2.

## C.

On February 11, 2010, Plaintiff appeared for the scheduled review hearing. Immigration Officer Ian Modelski conducted the hearing. After a series of questions on various innocuous topics, the conversation eventually turned to allegations made by Plaintiff's former wife, Angeline Jacobsen. Officer Modelski asked a number of questions about the couple's relationship, living arrangements, finances, and the like. He then asked: "she also said that when you—when you'd get upset that you would throw things, break things, is that something you did?" Agency Review Hr'g Tr. 37–38, Feb. 11, 2010, *attached as* Defs.' Tr. Ex. N ("Hr'g Tr."). Plaintiff's counsel interjected that he needed to speak to his client privately. He informed Officer Modelski "[we are] most likely gonna stop the interview." Hr'g Tr. 38. Going back on the record a short time later, Plaintiff's counsel explained (sic to transcript throughout):

Counsel:   Officer Modelski I believe the interview is going way beyond the interview required for citizenship. . . . Ah, at this point unless you wanna interview on the naturalization petition, ah, we respectfully will ask you to stop the interview.

Officer:   Well, I see a connection. . . . [I]t appears that he misrepresented the fact that he had been arrested, ah, that this then precluded a full examination of, of potential issues that would have been examined in some fashion or other that is legitimate. This relates to good moral character.

Counsel:   No, we, we came here in good faith, because right now there's an order of the United States District Court for no discovery by either side, which means you can't even interview him unless we voluntarily want to interview. . . .

Officer, ah, Modelski [you] did indicate to me earlier, right in the beginning, that you did receive a copy of that order from the court, so you are very well aware that discovery is — in this case, is extremely limited. And I believe you're interviewing him way beyond a naturalization application. What somebody said, what's the credibility? You have not given us an affidavit or any under oath statement from this person who is his ex-wife, and now suddenly he has to answer every question . . . .

- 5 -

I think it's, it's just not applicable. It's not relevant. . . .

Officer:   [W]hether it, whether it'll turn out to be a positive or negative factor I don't know yet at this point. . . .

Counsel:   O—obviously, I mean, if you have the pre-assumption to deny this then obviously—

Officer:   [inaudible]

Counsel:   —it's gonna go to a court, court—

Officer:   —[I] don't have a preexisting—

Counsel:   —and then court, you can—you know, in the court—

Officer:   If I had a pre-assumption I would say this is what she said and this is what I believe and—

Counsel:   This gentleman is a doctor. He has a medical degree from Russia. He just didn't do the certification here and now he works as a, as a, physician assistant or research assistant anesthesiologist. He is in a responsible position in this country for some 18 years and here he has to answer these questions to get his citizenship, which has been pending for six years, 2004 he filed. And court is very annoyed that the government is not able to complete his adjudication in six years.

Officer:   Well, that's why the government is asking these questions, to try to complete—

Counsel:   All right. Ah, again, once again, respectfully, ah, we'll stop the interview unless you wanna ask any question out of the N400 application or N336, which is the only subject we are here for. . . .

Officer:   Anything that happened during the statutory period relates to the N400. Anything that happened after the filing of the N400 is also relevant. . . .

*Both speaking at once*

Counsel:   —from what date, today going back five years?

Officer:   —no, the statutory period began five years before he filed the application. That's what he wanted the hearing about—

Counsel:    No, I believe that the statutory period—

*Both speaking at once*

Officer:    —saying that he [inaudible] did have good moral character—

Counsel:    —I believe the statutory period, period has to be counted from today.
When the government has delayed this application for six years it's
almost — you waive that right to go back five years beyond the
application of, of filing. But again, there's no point us arguing, you
know? You — government's got their attorneys, they can argue their
points, they got very high quality attorneys, U.S. attorneys, ah,
working on this case. . . . But I—we almost believe that this court—
this case will go to court. There's no way that—and in fact, our
pleadings when we filed a complaint we said we concede the fact that
you're going to deny it. And I—you know, we're even willing to
concede, because we know you're gonna deny it . . . .

This gentleman's a working person, medical field, serving people,
doing on patient what he needs to do every day, working with doctors
in the hospital. And for [you] to say that he's not a reformed person
after 12 years, he's not this, I mean, we can come up with many
reasons. If it goes to court, it goes to court. That's what we are here
for. But we are, again, respectfully, if you wanna interview on N400,
N336 to the extent, that's reasonable and relevant. We'll go forward
with it. Otherwise we'll just have to stop and go, ah—let it go to court.

Hr'g Tr. 38–43. When the officer attempted to inquire further about Plaintiff's former spouse,

Plaintiff's counsel terminated the interview.

## D.

On March 25, 2010, USCIS denied Plaintiff's appeal of his naturalization application.

The decision explained:

Your refusal to answer the reviewing officer's questions left additional areas of
your conduct and your character unexplored. Additionally, "immigration officials
may draw a negative inference from a naturalization applicant's silence." You
have therefore failed to establish that you satisfy all of the requirements for
naturalization, particularly regarding the need to demonstrate good moral
character and lawful admission as a permanent resident.

Title 8 Code of Federal Regulations, Section 335.7 provides guidance in this
situation:

- 7 -

> An applicant for naturalization who has appeared for the examination on his or her application as provided in 8 CFR 335.2 shall be considered as failing to prosecute such application if he or she, without good cause being shown, either failed to excuse an absence from a subsequently required appearance, or fails to provide within a reasonable period of time such documents, information, or testimony deemed by the Service to be necessary to establish his or her eligibility for naturalization. The Service shall deliver notice of all such requests for appearance or supporting evidence, in writing, to the applicant either in person or to the applicant's last known address. In the event that the applicant fails to respond within 30 days of the date of notification, the Service will adjudicate the application on the merits pursuant to Section 336.1 of this chapter.

> Whenever any person makes an application for naturalization, the burden of proof shall be upon such person to establish satisfaction of all the requirements to be naturalized as a citizen of the United States as quoted above in section 316.2 of Title 8 of the Code of Federal Regulations. Your unwillingness to submit required documentary and oral testimony is deemed to be a failure to prosecute this application. The incomplete record fails to establish your fulfillment of the requirements for naturalization, including those of good moral character, as specified in section 316(a)(3); the five years of lawful residence as specified in section 316(a)(1) and 318; and the continuous physical presence as specified in section 316(a)(2) of the Immigration and Nationality Act. You have not met your burden of proof. The denial of your Form N-400 is hereby affirmed.

> This decision is made without any prejudice to your right to seek review in accordance with section 310 of the Immigration and Nationality Act [8 U.S.C. § 1421].

Defs.' Resp. Mot. for Evidentiary Hr'g Ex. 1, at 6–7, ECF No. 20-2 (internal citation omitted).

Quoting § 310 of the Immigration and Nationality Act in a footnote, the decision noted:

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

*Id*. at 7 n.1 (quoting 8 U.S.C. 1421(c)).

- 8 -

**E.**

In March 2010, Plaintiff moved in this Court for a de novo review of USCIS's decision. *See* Pl.'s Mot. for Evidentiary Hr'g, ECF No. 18. The Agency responded that discovery was necessary first because USCIS has "attempted to collect evidence on issues relating to Plaintiff's good moral character through the administrative process; however, Plaintiff has not provided evidence in response to [USCIS's] requests, and he refused to answer questions at his appeal hearing on these issues and prematurely terminated the hearing." Defs.' Resp. 10. The Agency also asserted that "there is good authority that applicants who fail to comply with requests for information and documents in their naturalization proceedings have not adequately exhausted their administrative remedies, and therefore, have not satisfied the prerequisites for establishing subject matter jurisdiction under 8 U.S.C. § 1421(c)." *Id*. at 10 n.3 (citing *Johnson v. Bergland*, 614 F.2d 415, 417–18 (5th Cir. 1980); *Omari v. Gonzalez*, No. 3:05-cv-0397-P, 2005 WL 2036498, at *4 (N.D. Tex. Aug. 11, 2005)).

**F.**

In April, the Court granted the motion for an evidentiary hearing. *See* April 28, 2010 Order, ECF No. 22. Before the hearing began on June 21, 2011, however, the parties informed the court that a witness that both parties intended to call, Ms. Jacobsen, was unavailable to testify. At the conclusion of the proofs, Plaintiff moved for a continuance pending Ms. Jacobsen's availability. The motion was granted.

The trial resumed on August 30, 2011. At the conclusion of the proofs, the Court found that Plaintiff had met his burden of proof and demonstrated his "good moral character" by clear and convincing evidence. The Court reserved judgment, however, on a single legal issue, which the Court concluded merited supplemental briefing:

> Whether, pursuant to 8 U.S.C. § 1421(c) and all applicable statutes and regulations, the Court lacks jurisdiction to grant Plaintiff's application for naturalization because Plaintiff terminated the Defendant's interview regarding the denial of Plaintiff's naturalization application before the immigration officer had completed his examination of Plaintiff.

Order Incorporating Findings of Fact and Law and Ordering Supp. Briefing, at 2, ECF No. 48. The parties briefed the issue. Defendants argued that the Court lacked subject matter jurisdiction to hear Shweika's appeal. Shweika opposed this conclusion.

## G.

The Court ruled on the issue of subject-matter jurisdiction on March 27, 2012. See Op. & Order, ECF No. 53. The opinion explained that the hearing requirement in 8 U.S.C. § 1421(c) necessitated that the applicant complete the hearing and that the applicants having cmoplied with the statute was a necessary condition to this Court's exercise of jurisdiction. That is, that Congress did not consider the hearing optional, but necessary to this Court's exercise of jurisdiction. Because Shweika did not complete his hearing under 8 U.S.C. § 1447, the Court did not have jurisdiction under § 1421(c) to hear his appeal. Accordingly, judgment was entered dismissing the case. Shweika timely appealed.

## II.

### A.

The Sixth Circuit issued an opinion on Shweika's appeal on July 25, 2013. *See Shweika v. Dep't of Homeland Sec.*, 723 F.3d 710 (6th Cir. 2013). The court, facing an issue of first impression in the circuit, held that the completion requirement found in 8 U.S.C. §1421(c) is not jurisdictional. *Id.* at 717. Rather, it is a "claim-processing rule" of the "administrative-exhaustion" type. *Id.* at 716. The Sixth Circuit recognized that a regulation states that "[a] USCIS determination denying an application for naturalization under section [§ 1446] of the Act shall

not be subject to judicial review until the applicant has exhausted those administrative remedies available to the applicant under section [§ 1447] of the Act." 8 C.F.R. § 336.9. But the court concluded that the regulation is not entitled to deference insofar as it purports to delimit the scope of federal court jurisdiction under § 1421(c). *Id*. at 717-719. Consequently, the regulation was to be accorded no particular significance in addressing the question of whether § 1421(c)'s completion requirement is jurisdictional. It is not. *Id*. at 719.

The court then proceeded to provide some guidance as to what this Court should consider on remand. The Sixth Circuit explained that "[n]otwithstanding our conclusion that 8 U.S.C. § 1421(c)'s administrative-hearing requirement is nonjurisdictional, it does not follow that Shweika was thereby free to disregard the requirement, if in fact he did so." *Id*. at 719-20. Thus, on remand, this Court must "reconsider whether § 1421(c)'s administrative-hearing requirement implies a completion requirement; whether Shweika satisfied § 1421(c)'s administrative-hearing requirement; and, if he did not, what nonjurisdictional consequences attach to the failure to satisfy § 1421(c)'s administrative-hearing requirement." *Id*. at 720. The Sixth Circuit noted, instructively, that "[f]or example, the district court may consider whether statements in USCIS's order affirming the denial of Shweika's application for naturalization amount to a concession by USCIS that Shweika exhausted his administrative remedies." *Id*. at 720 n.7.

**B.**

After the Sixth Circuit returned the mandate in this case, the case was reopened and supplemental briefing was ordered from the parties. The order directing supplemental briefing instructed the parties to "address their understanding of the Sixth Circuit's direction, and also argument for how they believe the Court should proceed." Order Reopening Case & Directing

Supp. Briefing, ECF No. 61. The parties filed their supplemental briefs and the case is ripe for adjudication.

## III.

The first step on remand, according to the Sixth Circuit, is to reconsider whether § 1421(c) implies a requirement that the applicant not only begins the administrative hearing but actually complete it as well. While this Court has already concluded that § 1421(c) does require completion of a § 1447 review hearing, that conclusion is, of course, not mandated on remand. Furthermore, the posture of this case is such that the question is moot. The Service has conclusively represented that Shweika's application was denied and his interview complete, the conditions precedent to review under § 1421(c). Because the Service outright denied Shweika's application the Service conceded the completion of the hearing and denied Shweika's application. Even if the Service can be said to not have conceded Shweika's completion of a § 1447 hearing, remand for further factual findings is inappropriate. The administrative exhaustion requirement, as the Sixth Circuit has held, is only a prudential barrier to review by the federal courts. As such, it may be disregarded where good cause exists to do so.

## A.

The first question to be addressed is whether Shweika completed his § 1447 review hearing. If he did, then there is no need to examine what consequences follow from non-completion. Previously, the Court held that Shweika had not completed his hearing and, consequently, the Court did not have jurisdiction to hear his appeal. *See* March 27, 2012 Op. & Order, ECF No. 53. That opinion was reversed by the Sixth Circuit and vacated on remand. *See Shweika v. Dep't of Homeland Sec.*, 723 F.3d 710, 711 (6th Cir. 2013). The Court thus reviews the question anew.

- 12 -

The parties have presented differing views over whether Shweika actually completed the review hearing. Plaintiff argues that the only requirement 8 U.S.C. § 1421(c) poses is an attendance requirement. *See* Pl.'s Supp. Br., ECF No. 65. As long as an applicant's naturalization application is denied following the § 1447 hearing, the applicant has exhausted his administrative remedies and a court may review the denial. *Id*. Furthermore, Plaintiff contends that the Service has conceded, on multiple occasions, that its denial of Shweika's application was final and that, by implication, he had completed the § 1447 hearing. *Id*.

The Service argues to the contrary that 8 U.S.C. § 1421(c), even if non-jurisdictional, imposes a firm completion requirement which Shweika did not meet. *See* Defs.' Supp. Br., ECF No. 64. The Service urges the Court to deny Shweika's application on this basis. *Id*. In the alternative, it seeks to have Shweika's application remanded so that he may complete the § 1447 hearing as required by § 1421(c). *Id*.

The Service, however, conclusively denied Shweika's application for naturalization. Under the administrative naturalization scheme the Service had other recourse than outright denying his application if it concluded that Shweika withheld important testimony. As the Service explained in its denial letter to Shweika, it possibly could have availed itself of the procedures in the regulations that govern situations where an applicant does not furnish sufficient evidence in support of his application. Further, the Service could have withheld adjudication of Shweika's request for a review under 8 U.S.C. § 1447. Regardless of the possibilities available to the Service they were well within their right to affirm the denial of Shweika's application, which they did. Upon doing so, they also affirmed Shweika's statutory right to enter federal court and seek to have the denial of his application overturned. The Service cannot now change that position.

**1.**

Title 8 C.F.R. § 335.2 provides that "[s]ubsequent to the filing of an application for naturalization, each applicant shall appear in person before a USCIS officer designated to conduct examinations pursuant to 8 CFR 332.1." 8 C.F.R. § 335.2. If the applicant "complie[s] with all requirements for naturalization" the Service "shall grant the application." 8 C.F.R. § 335.3(a). The application shall be granted or denied at the time of the initial examination "or within 120-days after the date of the initial examination of the applicant for naturalization under § 335.2." *Id*. If, however, the Service believes there are deficiencies in the application, it "may continue the initial examination on an application for one reexamination, to afford the applicant an opportunity to overcome deficiencies on the application that may arise during the examination." 8 C.F.R. § 335.3(b). Should the Service use this option, it "must inform the applicant in writing of the grounds to be overcome or the evidence to be submitted." *Id*. The Service can require that the applicant reappear for examination, but not "earlier than 60 days after the first examination" and not later than the end of the "120-day period after the initial examination." *Id*. "If the applicant is unable to overcome the deficiencies in the application, the application shall be denied pursuant to § 336.1 of this chapter." *Id*.

If an applicant, appearing for either initial examination, should fail to furnish evidence "deemed by USCIS to be necessary to establish his or her eligibility for naturalization," including evidence in the form of testimony, the applicant "will be considered as failing to prosecute [his] application" for naturalization. 8 C.F.R. § 335.7. In such a circumstance, the Service "will deliver notice of requests for appearance or evidence as provided in 8 CFR 103.8." *Id*. If the applicant does not respond to that notice, "the application shall be decided on the merits unless the Attorney General dismisses it for lack of prosecution." 8 U.S.C. § 1446(e).

- 14 -

If the Service denies an application, the applicant may "accept the determination of the examining officer, or request a hearing before an immigration officer." 8 C.F.R. § 336.1. A request for hearing must be filed "within thirty days after the applicant receives the notice of denial." 8 C.F.R. § 336.2. The Service must "schedule a review hearing, within a reasonable period of time not to exceed 180 days from the date upon which the appeal is filed." 8 C.F.R. § 336.2.[1] The regulations outline the authority of the reviewing officer to collect evidence and determine the scope of the hearing:

> The reviewing officer will have the authority and discretion to review the application for naturalization, to examine the applicant, and either to affirm the findings and determination of the original examining officer or to re-determine the original decision in whole or in part. The reviewing officer will also have the discretion to review any administrative record which was created as part of the examination procedures as well USCIS files and reports. He or she may receive new evidence or take such additional testimony as may be deemed relevant to the applicant's eligibility for naturalization or which the applicant seeks to provide. Based upon the complexity of the issues to be reviewed or determined, and upon the necessity of conducting further examinations with respect to essential naturalization requirements, such as literacy or civics knowledge, the reviewing immigration officer may, in his or her discretion, conduct a full de novo hearing or may utilize a less formal review procedure, as he or she deems reasonable and in the interest of justice.

8 C.F.R. § 336.2. As noted above, the reviewing officer has plenary authority of review. That is, he or she may completely re-determine the application. In Shweika's case, the reviewing officer affirmed the initial denial of his application.

"A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5." 8 U.S.C. § 1421(c). Shweika's application was denied and he petitioned the Court for review.

---

[1]   When Shweika requested an appeal hearing the Service did not timely conduct the hearing.

While this framework applies to all applications for naturalization, there are a few problems with how this regulatory and statutory framework applies to Shweika's case. First, the Service applied seemingly inappropriate regulatory standards to Shweika's review hearing. Based on the regulatory standards the Service did apply, however, the Service would still be estopped from challenging Shweika's completion because it did not employ the available regulatory remedies for when an applicant fails to provide evidence. Second, even examining what appears to be the appropriate regulatory standard through which Shweika's review hearing should be reviewed, the Service still can be said to have represented that Shweika's hearing was complete and amenable to federal court review.

**i.**

The Service, by its own admission in its notice of denial to Shweika, conducted the 8 U.S.C. § 1447 hearing as an examination under 8 C.F.R. § 335.2. In its notice of denial, the Service explained:

> Your refusal to answer the reviewing officer's questions left additional areas of your conduct and your character unexplored. Additionally, "immigration officials may draw a negative inference from a naturalization applicant's silence." You have therefore failed to establish that you satisfy all of the requirements for naturalization, particularly regarding the need to demonstrate good moral character and lawful admission as a permanent resident.

> Title 8 Code of Federal Regulations, Section 335.7 provides guidance in this situation:

>> An applicant for naturalization who has appeared for the examination on his or her application as provided in 8 CFR 335.2 shall be considered as failing to prosecute such application if he or she, without good cause being shown, either failed to excuse an absence from a subsequently required appearance, or fails to provide within a reasonable period of time such documents, information, or testimony deemed by the Service to be necessary to establish his or her eligibility for naturalization. The Service shall deliver notice of all such requests for appearance or supporting evidence, in writing, to the applicant either in person or to the

- 16 -

> applicant's last known address. In the event that the applicant fails to respond within 30 days of the date of notification, the Service will adjudicate the application on the merits pursuant to Section 336.1 of this chapter.
>
> Whenever any person makes an application for naturalization, the burden of proof shall be upon such person to establish satisfaction of all the requirements to be naturalized as a citizen of the United States as quoted above in section 316.2 of Title 8 of the Code of Federal Regulations. Your unwillingness to submit required documentary and oral testimony is deemed to be a failure to prosecute this application. The incomplete record fails to establish your fulfillment of the requirements for naturalization, including those of good moral character, as specified in section 316(a)(3); the five years of lawful residence as specified in section 316(a)(1) and 318; and the continuous physical presence as specified in section 316(a)(2) of the Immigration and Nationality Act. You have not met your burden of proof. The denial of your Form N-400 is hereby affirmed.
>
> This decision is made without any prejudice to your right to seek review in accordance with section 310 of the Immigration and Nationality Act [8 U.S.C. § 1421].

Defs.' Resp. Mot. for Evidentiary Hr'g Ex. 1, at 6–7, ECF No. 20-2 (internal citation omitted). Although the Service cites to 8 C.F.R. § 335.2 it does not represent that it ever availed itself of the notice procedure. Whether that procedure is required by the regulation is inconsequential because the Service proceeded to the merits of Shweika's application as directed by § 335.2. Importantly, the Service did not utilize the § 335.2 procedure because, presumably, the Service did not "consider" the information to be material.

Ultimately, if the Service understood Shweika to be withholding testimony it had recourse to different statutory and regulatory remedies short of denying his application on the merits or, at least, before denying his application on the merits. First, the Service could have issued a notice under 8 C.F.R. § 335.7 requesting the evidence Shweika was withholding. If and when Shweika declined to provide that evidence, the Service could have then denied his application. Second, the Service could have continued Shweika's initial examination under 8 C.F.R. § 335.3. In doing so the Service could have informed Shweika that the continued

- 17 -

examination would concern the subject of his withheld testimony. Again, if and when Shweika declined to provide that testimony at the continued hearing, the Service could have then denied his application. Third, the Service had the option of combining the two approaches. This is, first continuing the examination under 8 C.F.R. § 335.3 and, when Shweika again withheld testimony, issuing him a notice under 8 C.F.R. § 335.7. Then, to repeat, the Service could have denied his application on the merits. Lastly, the Service could have done one or both of the above (or, possibly neither) and instead of denying Shweika's application, dismissed it for lack of prosecution under 8 U.S.C. § 1446(e).

It is important that the Service did not avail itself of any of these options. Instead, it informed him that his withheld testimony permitted the Service to draw a negative inference from his silence and it denied his application. According to the Service's notice of denial, it denied Shweika's application in accordance with the regulations governing a failure to prosecute for lack of evidence provided by an applicant. It was then that Shweika appealed.

**ii.**

The Service's approach is problematic. This is because the denial of an application after an applicant's examination under 8 C.F.R. § 335.2 does not entitle an applicant to enter federal court. If an applicant does not provide necessary evidence during a § 335.2 examination, the Service may draw a negative inference from the absence of evidence and must adjudicate the application on the merits. If and when the Service denies the application under § 335.7 following a failure to prosecute under § 335.2, the Service must alert the applicant to his right to request a review hearing under 8 C.F.R. § 336.2. A hearing under § 336.2 is identical to the statutory review hearing under the statutory 8 U.S.C. § 1447.

The complication is evident. The Service affirmed its prior denial of Shweika's application when he refused to answer questions following an 8 U.S.C. § 1447 review hearing. The Service only conducted that hearing because it had denied Shweika's application under 8 C.F.R. § 335.7 without an oral examination. Thus, the Service's citation to 8 C.F.R. § 335.2 and § 335.7 in Shweika's denial letter is at odds with the regulatory and statutory scheme. That is, the statutory requirement for a review hearing found at 8 U.S.C. § 1447 is encoded in the regulations at 8 C.F.R. § 336.2, not § 335 and its subsections. So it is not clear that the Service is able to claim that Shweika failed to prosecute his application by not providing full testimony during a review hearing under 8 U.S.C. § 1447 and 8 C.F.R. § 336.2, still deny the application, but then claim the applicant has not exhausted administrative remedies. Nothing in the regulatory or statutory framework provides that option. That option is only available during the initial review of an application and initial examination of an applicant before a merits determination is made.[2]

Similarly, it is not clear from the regulatory or statutory framework what recourse the Service has if an applicant does not fully participate in a review hearing. But nothing compels that the Service decide the appeal. In fact, the text of the regulations indicates a plenary power of the Service to seek testimony from the applicant:

> The reviewing officer will have the authority and discretion to review the application for naturalization, to examine the applicant, and either to affirm the findings and determination of the original examining officer or to re-determine the original decision in whole or in part. The reviewing officer will also have the discretion to review any administrative record which was created as part of the examination procedures as well USCIS files and reports. He or she may receive new evidence or take such additional testimony as may be deemed relevant to the applicant's eligibility for naturalization or which the applicant seeks to provide.

---

[2]     It is possible that the Service could have deemed Shweika's application withdrawn under 8 U.S.C. § 1446(e). But that option also does not appear to apply to 8 U.S.C. § 1447 review hearings.

8 C.F.R. § 336.2. Presumably, then, a refusal by the applicant to provide testimony would prevent the completion of the review hearing if the examining officer determined the testimony was necessary to adjudicating the application. If an applicant did not comply with questioning, as Shweika did not, the reviewing officer can conclude that the hearing remains incomplete since the applicant is impeding his or her ability to "receive new evidence or take such additional testimony as may be deemed relevant to the applicant's eligibility for naturalization or which the applicant seeks to provide." *Id*. At that point, the reviewing officer may also determine that "upon the necessity of conducting further examinations" the appeal of the application's denial cannot be resolved following an incomplete hearing. 8 C.F.R. § 336.2.

This approach would lead to systemic uniformity with 8 U.S.C. § 1421(c). The statute provides that

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5.

8 U.S.C.A. § 1421(c). It would be at odds with the regulatory scheme if the Service could conclusively deny an application, giving the applicant no further recourse to review, but then bar the applicant from entering federal court because the Service did not obtain all the evidence it sought. The very fact that the statutes and regulations governing naturalization applications provide the Service with methods to remedy evidentiary deficiencies that do not include denial on the merits means that a merits denial by the Service after a § 1447 hearing must concede completion of that hearing.

The Service has, potentially, numerous ways to seek evidence from a reluctant applicant. Many, if not all of those include withholding a merits determination. None were used here. The

- 20 -

Service affirmed its prior denial of Shweika's application on the merits following his § 1447 hearing.

### iii.

For reasons not explained in the record, the Service applied the 8 C.F.R. § 335 regulations to Shweika's 8 U.S.C. § 1447 review hearing. Whether it was appropriate for the Service to do so is a question that need not be conclusively resolved in this opinion. It is simply worth noting, as was done above, that the Service's decision to apply those regulations to Shweika's review hearing appears in conflict with the regulatory and statutory framework for naturalization applications. What the prior two sections explain, though, is that regardless of how the Service's approach to Shweika's hearing is construed under the regulations, it denied his application and conceded that his administrative remedies had been exhausted and his application was ripe for appeal.

Because the Service has conceded that Shweika completed his hearing, the slightly more metaphysical question of whether Shweika actually completed the 8 U.S.C. § 1447 hearing need not be addressed. Also, the question of whether Shweika exhausted his administrative remedies need not be entertained. Judgment will be entered consistent with the determination on the record that Shweika meets the good moral character requirements for citizenship based on the subjects entertained at the evidentiary hearing. This does not mean, however, that Shweika's application for naturalization is granted. As explained below, supplemental briefing is required in light of the representations made on remand by the Service concerning Shweika's application.

### 2.

Some attention should be given to the prudential concerns that the Service raises in response to the approach adopted above. The Service argues that not remanding Shweika's case

to force him to complete his hearing would eviscerate the administrative review process for naturalization applications. All one would need to do, the Service's argument runs, is file an application, rebuff any attempts by the Service at gathering evidence, then appeal to federal court when the Service inevitably denies his or her application. This argument is flawed.

First, it is not clear, and the Service presents no arguments to the point, that applicants proceeding directly to a federal judicial forum is preferable to them first being subject to agency review. It would not be quicker, as the naturalization statutes and regulations would still impose the governing review timetables. Thus, federal judicial review would not provide a more timely resolution to applicants. There is also no argument by the Service that the federal courts are more sympathetic to applicants. Even if that were true, applicants have a right to federal judicial review of their application. Why they would desire to reach that forum sooner is left unexplained by the Service.

Second, based on the statutory framework and the facts of this case, not remanding Shweika's case would not have adverse precedential implications. In future cases where an applicant does not complete a § 1447 hearing the Service is not required to deny the application, but rather may avail itself of the statutory and regulatory procedures available when evidence provided by an applicant is insufficient. As a result, the applicant may seek a mandamus order from a federal court that requires the Service issue a decision, at which point the Service could defend its non-issuance of an appeal decision on the basis of the applicant's failure to provide testimony. Whatever the case may eventually be, the Service cannot deny an application on the merits, as it has done here, then argue that the review process has not been completed.

**B.**

Assuming, without deciding, that Shweika did not exhaust his administrative remedies, it would still not be appropriate to remand to the Service for a full review hearing. An administrative exhaustion requirement, as explained by the Sixth Circuit, is a non-jurisdictional predicate to federal court review. *Shweika v. Dep't of Homeland Sec.*, 723 F.3d 710, 716 (6th Cir. 2013). Thus, being non-jurisdictional, it operates only as a prudential barrier to a district court hearing a naturalization appeal. *See Perkovic v. I.N.S.*, 33 F.3d 615, 619 (6th Cir. 1994) (holding that exhaustion requirements not written into the text of a statute are prudential, not jurisdictional). In general, courts should decline agency appeals where administrative remedies have not been exhausted. *See Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). The Ninth Circuit has identified three factors a court should consider when deciding whether prudential exhaustion should be enforced:

> [C]ourts . . . may still require exhaustion if: (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983) (citing *McGee v. United States*, 402 U.S. 479, 484 (1971); *McKart v. United States*, 395 U.S. 185, 193–95 (1969)).

As a result, there are circumstances where a court may disregard prudential barriers to administrative appeals. A court may disregard prudential exhaustion concerns when "the legal question is 'fit' for resolution and delay means hardship or when exhaustion would prove 'futile.'" *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 12-13 (2000) (internal citations omitted).

None of the prudential concerns animating the administrative exhaustion requirement are present in Shweika's appeal. The Service was given ample opportunity to examine Shweika's application and did so with respect to all of the evidence Shweika presented save his testimony on the past domestic incident in question. The Service does not explain how its specific expertise in matters of naturalization would be brought to bear on that particular issue. Indeed, no compelling rationale can be conceived. Second, relaxing the requirement in this case would not encourage bypass of the naturalization process. Indeed, Shweika never evinced an intent to bypass the Service's procedures. Rather, he policed the Service's statutory and regulatory deadlines more closely than the Service. Both times he entered federal court prior to his evidentiary hearing it was to compel the Service to act, not to convince the Court that the agency process should be bypassed. Furthermore, Shweika would be bypassing the administrative scheme only with respect to limited testimony during a § 1447 review hearing. Allowing Shweika to bypass certain contentious questioning, which he felt he had a legally justifiable reason to resist, would not encourage future applicants to bypass the scheme altogether, or even in part. Lastly, while full administrative review could allow the Service to correct any mistakes it made in reviewing Shweika's application, there is ample evidence in the record that there was dim prospect of that correction actually occurring. When Shweika's testimony was not forthcoming, the Service did not seek to address his concerns about whether the line of questioning he objected to was a valid subject for the hearing. The Service also did not attempt to utilize regulatory procedures[3] that would have at least given them another, less confrontational path to obtaining Shweika's testimony.

---

[3]    If, as discussed above, these procedures were actually available. The Service represents that they were.

Consequently, attempting to proceed with the administrative process, or this Court ordering that the administrative process continue, would have been futile for Shweika. The Service was content denying his application without any further attempt at discovering evidence. With such a small portion of evidence outstanding, and a dispute existing over whether testimony could be taken on the underlying issue, it can also fairly be said that Shweika's application was "fit" for review by the Court. Shweika's case will not be remanded on the issues covered in the evidentiary hearing. The Service's decision on Shweika's naturalization application will be vacated. *See* 5 U.S.C. § 706.

## C.

What remains is consideration of where Shweika's application and case currently stands. While Shweika was determined to have satisfied the good moral character requirement based on the evidence presented at the evidentiary hearing, the Court did not enter judgment granting Shweika's application for naturalization. It will not do so now. The Service represented in its supplemental briefing that Shweika admitted to submitting false or misleading information in connection with an application for benefits under the laws governing immigration and nationalization. The Service believes that the false or misleading information must have been given in connection with the current application, since the admission was made in a follow-up application Shweika initiated. The naturalization statute provides:

> For the purposes of this chapter--No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was . . . (6) one who has given false testimony for the purpose of obtaining any benefits under this chapter[.]

8 U.S.C. § 1101(f). If Shweika provided false or misleading information in connection with his current naturalization application, it cannot be granted.

Supplemental briefing concerning this issue will be directed. The Service will be directed to submit a brief of no more than ten pages explaining its position concerning Shweika's alleged admission to supplying false information. The Service must attach the application on which Shweika makes this admission. Shweika will then have the opportunity to respond, also in no more than ten pages, explaining his position concerning the Service's allegation. The Service shall then file a reply brief that is no more than five pages in length.

**IV.**

Accordingly, it is **ORDERED** that the decision of Defendants Department of Homeland Security and United States Citizenship and Immigration Service denying Plaintiff Mazen Shweika's application for naturalization is **VACATED**.

It is further **ORDERED** that Defendants are **DIRECTED** to file a supplemental brief, in conformity with the guidance set forth above, **on or before November 20, 2015**. The brief shall have attached as an exhibit the document wherein Shweika admitted to providing false information.

It is further **ORDERED** that Plaintiff Shweika is **DIRECTED** to file a supplemental brief in response to Defendants supplemental brief, in conformity with the guidance set forth above, **on or before December 11, 2015**.

It is further **ORDERED** that Defendants are **DIRECTED** to file a supplemental brief in reply to Plaintiff's response brief, in conformity with the guidance set forth above, **on or before December 18, 2015**.

Dated: October 29, 2015                            s/Thomas L. Ludington
                                                   THOMAS L. LUDINGTON
                                                   United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 29, 2015.

s/Johnetta Curry Williams
JOHNETTA CURRY WILLIAMS
Acting Case Manager