UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MAZEN SHWEIKA,

                Plaintiff,                           Case No. 09-cv-11781

v.                                            Honorable Thomas L. Ludington

DEPARTMENT OF HOMELAND SECURITY and
UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICE,

                Defendants.

_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S APPLICATION FOR
NATURALIZATION AND DIRECTING BRIEFING ON COSTS AND FEES**

This case has a long history. Mazen Mohammad Shweika originally filed a petition for naturalization with the Department of Homeland Security's (DHS) United States Citizenship and Immigration Service (USCIS) on April 28, 2004.[1] Because USCIS did not address Skweika's petition within three years, he filed a mandamus action in this Court. In 2008, the Court remanded to USCIS for a decision. *Shweika v. Cannon*, No. 1:07-cv-10870 (E.D. Mich. 2008). On May 29, 2008, USCIS denied Shweika's naturalization petition, concluding that he lacked the requisite "good moral character." Shweika then sought administrative review of that decision. Ten months passed without USCIS taking action on that request. Finally, Shweika filed this suit seeking a writ of mandamus directing UNCIS to conduct the review hearing or, alternatively, a de novo review of Shweika's application pursuant to 8 U.S.C. § 1421(c).

In response to Shweika's filing of the suit, USCIS scheduled the review hearing. At the hearing, the immigration officer began examining Shweika on topics which had not been

---

[1] Plaintiff was born in Jordan in 1962. Having trained abroad as doctor, he moved to this country and became a certified nurse anesthesiologist. Since 1998, Shweika has been a lawful permanent resident of the United States.

broached at the original hearing that Shweika was seeking review of. Specifically, the officer began questioning Shweika about allegations of a domestic conflict made by Shweika's ex-wife. Shweika's counsel ended the hearing rather than allow the line of questioning to continue. *See* Order Vacating Agency Decision and Directing Supp. Br. at 5–7, ECF No. 70 (describing and providing a partial transcript of the hearing). USCIS subsequently denied Shweika's petition for naturalization, telling Shweika that

> Your refusal to answer the reviewing officer's questions left additional areas of your conduct and your character unexplored. Additionally, "immigration officials may draw a negative inference from a naturalization applicant's silence." You have therefore failed to establish that you satisfy all of the requirements for naturalization, particularly regarding the need to demonstrate good moral character and lawful admission as a permanent resident.

Agency Decision at 5, ECF No. 20, Ex. 1.

Shweika then sought de novo review in this Court of the decision denying his petition.

A bench trial was held over three days in 2011. After the trial, the Court concluded on the record that Shweika had met his burden of proof of demonstrating "good moral character." In a subsequent order, the Court reiterated that conclusion, but directed supplemental briefing on the following question:

> Whether, pursuant to 8 U.S.C. § 1421(c) and all applicable statutes and regulations, the Court lacks jurisdiction to grant Plaintiff's application for naturalization because Plaintiff terminated the Defendant's interview regarding the denial of Plaintiff's naturalization application before the immigration officer had completed his examination of Plaintiff.

February 15, 2012, Order at 2, ECF No. 48.

After reviewing the supplemental briefing, the Court entered an opinion concluding that it did not have subject matter jurisdiction over Shweika's appeal. ECF No. 53. The Court rested its conclusion on the fact that Shweika had not completed his 8 U.S.C. § 1447 review hearing

and thus had not exhausted his administrative remedies, as required by the statute providing jurisdiction. Shweika appealed from the dismissal of his case. ECF no. 56.

On July 25, 2013, the Sixth Circuit held that the administrative hearing requirement of 8 U.S.C. § 1447 did not impose a jurisdictional limitation on judicial review. ECF No. 58. Accordingly, the Sixth Circuit reversed the Court's conclusion that it lacked subject matter jurisdiction over Shweika's petition. However, the court stated:

> Notwithstanding our conclusion that 8 U.S.C. § 1421(c)'s administrative-hearing requirement is nonjurisdictional, it does not follow that Shweika was thereby free to disregard the requirement, if in fact he did so. Upon remand, we leave to the district court to reconsider whether § 1421(c)'s administrative-hearing requirement implies a completion requirement; whether Shweika satisfied § 1421(c)'s administrative-hearing requirement; and, if he did not, what nonjurisdictional consequences attach to the failure to satisfy § 1421(c)'s administrative-hearing requirement.

*Id.* at 13.

On October 29, 2015, this Court issued an opinion and order vacating USCIS's denial of Shweika's application. ECF No. 70. The Court reasoned that, because USCIS "has conclusively represented that Shweika's application was denied and his interview complete," the question of whether § 1421(c)'s imposed a completion requirement was moot. *Id.* at 12. Further, the order concluded that, even if Shweika had not exhausted his administrative remedies, remand to USCIS for a continued hearing was not justified for several reasons. First, Shweika's suits in this Court were both initiated after long and unexplained delays by USCIS. Likewise, because the § 1421(c) review hearing was partially completed, only a small amount of evidence was outstanding. Thus, remand was unnecessary.

The October 2015 order then addressed the remaining issues in the case:

> What remains is consideration of where Shweika's application and case currently stands. While Shweika was determined to have satisfied the good moral character requirement based on the evidence presented at the evidentiary hearing, the Court

did not enter judgment granting Shweika's application for naturalization. It will not do so now. The Service represented in its supplemental briefing that Shweika admitted to submitting false or misleading information in connection with an application for benefits under the laws governing immigration and nationalization. The Service believes that the false or misleading information must have been given in connection with the current application, since the admission was made in a follow-up application Shweika initiated. The naturalization statute provides:

> For the purposes of this chapter--No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was . . . (6) one who has given false testimony for the purpose of obtaining any benefits under this chapter[.]

8 U.S.C. § 1101(f). If Shweika provided false or misleading information in connection with his current naturalization application, it cannot be granted.

ECF No. 70. at 25.

The Court ordered supplemental briefing on that single issue. For the reasons stated below, Defendants' request that the case be remanded for an evidentiary hearing will be denied and Shweika's petition for naturalization will be granted.

## I.

As stated, above this Court has already concluded, after a three day bench trial, that Shweika had demonstrated his "good moral character" by clear and convincing evidence. The limited scope of the issue now presented must thus be emphasized. Defendants argue that, in a separate naturalization application which Shweika filed on October 22, 2012,[2] he admitted to giving false or misleading information while applying for an immigration benefit. The sequence of events whereby Shweika provided inaccurate information to Defendants will be summarized below.

---

[2] This application has now been pending for over four years. No indications have been provided to the Court that USCIS has taken any action on this application.

In 1999, Shweika was arrested for allegedly assaulting his wife. Record of Arrest, ECF No. 73, Ex. 1. He was acquitted of that misdemeanor offense. *Id.* In 2000, Shweika filed a Petition to Remove the Conditions on Residence, known as a Form I-751. I-751, ECF No. 73, Ex. 2. In that form, Shweika was asked: "Since becoming a conditional resident, have you ever been arrested, cited, charged, indicted, convicted, fined, or imprisoned for breaking or violating any law or ordinance (excluding traffic regulations), or committed any crime for which you were not arrested?" *Id.* at 2. Shweika checked the "No" box. *Id.*

In 2004, Shweika filed the petition for naturalization which is the subject of the current suit. Pet. Naturalization, ECF No. 73, Ex. 3. In that application, Shweika was asked if he had ever been arrested, charged with a crime, or convicted of a crime. *Id.* at 8. He answered "Yes" to each of those questions. In the space provided, Shweika listed the arrests and convictions he was referencing. In August 1992, Shweika was charged with kidnapping his girlfriend. *Id.* In September 21, 1992, Shweika was charged with disorderly conduct and assault. *Id.* Those two cases were consolidated, and Shweika received two years of probation. *Id.* Shweika also listed the 1999 assault and battery charges, noting that he had been acquitted. *Id.*

In February 2010, Shweika was interviewed as part of his petition for naturalization. In that interview, Shweika was asked about the I-751 form he submitted in 2000. Feb. 2010 Interview at 7, ECF No. 73, Ex. C. A USCIS agent asked: "Now there's an indication on the forms that they were -- that both you and Angeline signed on May 7th, 2000. Did you sign the form at the same time?" *Id.* Shweika replied: "Yes. It has been a long time, but yes, we filed on the same time and we filled out the paperwork." *Id.* The following interaction then took place:

[Q:] Who, who filled out the form?

[A:] Ah, there is a – I don't recall. I don't recall. But there is some --

[Q:] It doesn't look like either, either yours or her printing or -- you think it was someone else?

[A:] No. No, [inaudible] because we were together and she filed. I know this is my handwriting looks like here. This is her handwriting.

[Q:] Oh, so you both filled it out together --

[A:] Yes.

[Q:] -- it looks like? Okay. Okay. Now I want you to take a look here. There's a question in part three here, this first one and it says, "Since becoming co--a conditional resident have you ever been arrested, cited, charged, indicted, convicted, fined or imprisoned for breaking or violating any law or ordinance excluding traffic regulations or committed any crime for which you were not arrested?" Why'd you mark the no box when you'd been arrested and charged with assaulting Angeline? Right? You were arrested and charged with assaulting her and why didn't you check the yes box on that?

[A:] I'm not sure who marked that part. It has been so many years and--

. . .

[Q:] If you had correctly checked the yes box it's quite likely that they woulda referred this for further investigation or for an interview or both, and so I have to ask were you deliberately trying to avoid further scrutiny by marking that?

[A:] Definitely no. Definitely no. Because we filled--

[Q:] Okay.

[A:] -- this out together and I don't remember who marked that box.

[Q:] Okay. Now--

[A:] Because Angeline-- my ex-wife used to do all the paperwork. I remember this is my signature, yes, it is my signature. And this is her signature. But which part that she filled out or I filled out—

*Id.* at 8–9.

At a later deposition, Shweika was again questioned about who filled out the I-751 form. August 2010 Dep., ECF No. 73, Ex. D. Shweika was asked who checked the box in response to the question about previous arrests, and Shweika stated "I can't recall who checked the boxes."

*Id.* at 110. He also stated that, because his wife filled out much of the form, he did not read everything carefully. *Id.* Rather, he signed in the places she instructed him to sign. *Id.* Shweika was then asked: "And do you now say that - - is 'no' the correct answer to [the question about previous arrests]?" *Id.* at 112. Shweika responded:

> No, I'm saying that I did not read that box and what's pertaining to it. I wish that I had read it or Angeline have read it and pointed out. Definitely, we would have marked it as yes, although I had doubts because it was expunged. I did not know even with expungement, you would still have to answer. At least, we would have investigated more.

*Id.* at 112–113.

The interviewer asked: "Did you feel at that at that time you didn't have to disclose it because it was expunged?" *Id.* at 113. Shweika explained: "I did not know that this item, I never read that box." *Id.*

As already mentioned, Shweika completed a second application for naturalization in 2012. 2012 Application, ECF No. 73, Ex. E. In that petition, Shweika was asked: "Have you **ever** given false or misleading testimony to any U.S. Government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal?" *Id.* at 8 (emphasis in original). Shweika acknowledged that he had. *Id.* In an addendum to the petition, Shweika explained the reason he answered "yes":

> I never knowingly misled the government, but when my ex-wife prepared my application for Conditional Residency I did not study it carefully enough. In it, she neglected to mention the assault charge against me on 05/26/1999 in Fairfax County, Virginia, of which I was acquitted. I was not aware of this error until it was brought to my attention years later during an N-400 interview.

*Id.* at 11.

## II.

### A.

Applicants for naturalization must show that they are "a person of good moral character." 8 U.S.C. § 1327(a). The relevant statutory period for which the applicant must demonstrate his or her good character is five years before the application is filed and continues until the applicant becomes a United States citizen. *Id.* After the 2011 bench trial, the Court found that Shweika had demonstrated his good moral character by a clear and convincing evidence. However, Defendants now argue there are several statutory provisions which preclude naturalization in certain circumstances, based on lack of good moral character, which apply to Shweika. *See* 8 U.S.C. § 1101(f). Of the provisions in § 1101(f), only § 1101(f)(6) is relevant here. Under that section, an applicant "who has given false testimony for the purpose of obtaining any benefits under this chapter" during the relevant statutory period *cannot* be found to be a person of good moral character. *Id.*

There is not a materiality requirement for false testimony under § 1101(f)(6). *Kungys v. United States*, 485 U.S. 759, 779 (1988). As the *Kungys* Court interpreted § 1101(f)(6): "Literally read, it denominates a person to be of bad moral character on account of having given false testimony if he has told even the most immaterial of lies with the subjective intent of obtaining immigration or naturalization benefits." *Id.* The Supreme Court added several further clarifications to its interpretation of § 1101(f)(6). First, the "false testimony" of § 1101(f)(6) is "limited to oral statements made under oath," and "does not include . . . 'falsified documents or statements not made under oath.'" *Id.* Second, the provision "applies to only those misrepresentations made with the subjective intent of obtaining immigration benefits." *Id.* Further, the "invalidating intent . . . must be proved by 'clear, unequivocal, and convincing evidence which does not leave the issue in doubt.'" *Id.* at 781 (quoting *Schneiderman v. United*

*States*, 320 U.S. 118, 158 (1943)). Finally, the "false testimony provisions of § 1101(f)(6) do not apply to 'concealments.'" *Id.*

Against this legal background, it is clear that Shweika has not violated § 1101(f)(6). Defendants cannot rely on the falsity of any representations Shweika may have made in documents he provided to Defendants, because such misrepresentations are not "false testimony." The only sworn oral testimony Shweika gave on this issue came in his interview and deposition (described and partially reproduced above). But in those oral statements, Shweika never denies that he was arrested in 1999 or that he failed to properly disclose that arrest in the I-751 Form. Shweika simply discusses a prior misrepresentation made in a written document during the oral testimony. If Shweika had lied about who actually prepared the I-751 Form (and, specifically, who checked the box denying he had been arrested), that would constitute false testimony for § 1101(f)(6) purposes. But Defendants have provided no evidence that Shweika's oral statements on that point were false. Rather, Shweika's testimony and disclosures at every stage since he filed the I-751 Form have been consistent: he and his wife filled out the form together. He does not remember who checked the box denying he had been arrested. His wife filled out the majority of the form, and Shweika signed where she told him to without sufficiently double checking the form for accuracy. Certainly, Shweika's statements are self-serving, but that is not evidence of falsity. Rather, the consistency of Shweika's story suggests that the I-751 Form was completed as he has repeatedly described.[3]

---

[3] Defendants also argue that Shweika falsely stated during his naturalization examination that he disclosed all his arrests on his "application." Feb. 2010 Interview at 8. Having reviewed the transcript, the Court believes that the most natural interpretation of that statement is that Shweika was referring to his 2004 application for naturalization. In other words, in response to the allegation that he did not disclose the arrest on his petition to remove conditions on his residence, Shweika asserted (correctly) that he disclosed all his prior arrests on his naturalization application four years later. Even if the statement is considered ambiguous, that ambiguity falls short of "clear, unequivocal, and convincing" evidence of intent to deceive. *See Kungys*, 485 U.S. at 781.

In short, Defendants' argument that Shweika has provided false testimony is entirely incompatible with the Supreme Court's decision in *Kungys*. Given the fact that Defendants cite *Kungys* in their supplemental brief, it is difficult to understand why Defendants are arguing that Shweika has violated § 1101(f)(6). Defendants have presented no unambiguous evidence of false oral testimony. Shweika did fail to disclose an arrest on the Petition to Remove Conditions on Residence filed in 2000, but that is not oral testimony. Even if it were, Shweika's failure to disclose that arrest appears more like a "concealment" (which is not a violation of § 1101(f)(6)) than an affirmative misrepresentation. Further, Shweika properly disclosed the arrest four years later (without prompting) and has admitted that the arrest was improperly omitted at every confrontation since. Given Shweika's openness about the nondisclosure, it is questionable whether Shweika ever evidenced a subjective intent to deceive. In short, virtually no aspect of Shweika's alleged misrepresentations qualify as a violation of § 1101(f)(6) as that provision has been interpreted by the Supreme Court.

**B.**

Defendants further argue that Shweika is an alien who has committed a crime of moral turpitude and is thus precluded from naturalizing. 8 U.S.C. § 1182(a)(2)(A) provides that "any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a crime involving moral turpitude" is inadmissible. Defendants try to argue that Shweika has admitted to violating 18 U.S.C. § 1001(a)(3), which makes it a crime to "knowingly and willfully" create a false document in a matter within the jurisdiction of the executive, legislative, or judicial branch of the United States Government. But Shweika has not been convicted of any such crime, and the purported admissions of such conduct which Defendants point to in this case falls far short of establishing that Shweika

- 10 -

"knowingly and willfully" prepared a false document. Even construing the facts Defendants have presented in a light most favorable to Defendants, Shweika's nondisclosures related to the 1999 arrest do not demonstrate his guilt of a crime of moral turpitude.

**C.**

Defendants alternatively argue that Shweika should be found to lack good moral character under § 1101(f)'s "catch-all" provision. But Defendants provide no justification for such a finding separate from Shweika's alleged false testimony, discussed exhaustively above. In the context of this case, where the Court has already held a three day bench trial and found that Shweika was of good moral character, Defendants' vague argument to the contrary is without merit.

In short, Defendants have presented no new evidence which would be sufficient under existing law to suggest that Shweika lacks the good moral character necessary to be naturalized. Rather, most of Defendants' arguments are expressly addressed and barred by the Supreme Court's decision in *Kungys*. Given the Defendants' failure to establish a genuine issue of fact on this issue, Defendants' request for an evidentiary hearing will be denied. Because this Court has already found that Shweika possesses good moral character and because none of Defendants' current allegations cast doubt on that finding, Shweika's application for naturalization will be granted.

**D.**

In his Complaint, Shweika requests that he be awarded costs and attorney fees pursuant to 5 U.S.C. § 504 and 28 U.S.C. § 2412(d). The Court finds that Defendants' argument that § 1101(f) or 8 U.S.C. § 1182(a)(2)(A) bars Shweika from being naturalized was unjustified by both the facts presented and existing law. Shweika will be directed to file a brief substantiating

- 11 -

his costs related to opposing the arguments Defendants made in the most recent round of supplemental briefing and providing the legal framework whereby Shweika's request for costs and attorney fees should be analyzed.

**III.**

Accordingly, it is **ORDERED** that Plaintiff Shweika's Petition for Naturalization, ECF No. 1, is **GRANTED.**

It is further **ORDERED** that this matter is **REFERRED** to the United States Citizenship and Immigration Service for instructions regarding the Naturalization Oath Ceremony.

It is further **ORDERED** that Plaintiff Shweika is **DIRECTED** to submit a brief with accompanying documentation substantiating his costs and attorney fees related to the most recent round of supplemental briefing and providing the legal framework for analyzing his request for fees and costs **on or before March 31, 2017.**

It is further **ORDERED** that Defendants are **DIRECTED** to file a response, if they oppose Plaintiff Shweika's request for fees, **on or before April 7, 2017.**

It is further **ORDERED** that Plaintiff Shweika is **DIRECTED** to file a reply, if needed, **on or before April 14, 2017.**

Dated: March 24, 2017                              s/Thomas L. Ludington
                                                   THOMAS L. LUDINGTON
                                                   United States District Judge

- 12 -

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 24, 2017.

s/Michael A. Sian_____
MICHAEL A. SIAN, Case Manager